UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FELD ENTERTAINMENT, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civ. No. 07-1532 (EGS) |
| AMERICAN SOCIETY FOR THE PREVENTION OF | ) | |
| CRUELTY TO ANIMALS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO TEMPORARILY STAY ALL PROCEEDINGS
AND SUPPORTING MEMORANDUM**

On August 23, 2007, this Court denied Feld Entertainment, Inc.'s ("FEI") motion to
amend its Answer in ASPCA v. Ringling Bros. ("the ESA Action"), No. 03-2006 (EGS)
(D.D.C.), to assert a Counterclaim under the Racketeer Influenced and Corrupt Practices Act
("RICO") against the American Society for the Prevention of Cruelty to Animals and the other
Plaintiffs (the "ASPCA Plaintiffs") in that case.  See ESA Action, Mem. Op. of Aug. 23, 2007
(Docket Entry ("DE") 176) ("Mem. Op.") (Defendants' Exhibit ("Def. Exh.") 1).[1]  The ESA
Action concerns the ASPCA Plaintiffs' allegations that FEI's mistreatment of its Asian elephants
violates the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, et seq.  The Proposed
Counterclaim was premised on FEI's theory that the plaintiff Tom Rider has been "bribed" to say
that he has Article III standing and to be a witness in the ESA Action.  See  ESA Action, FEI's
Mot. To Amend, Exh. 3 (DE 121)("Proposed Counterclaim").

---

[1]      The RICO Counterclaim also named the Wildlife Advocacy Project ("WAP"), one
of the many organizations that have provided funding to Tom Rider - a former FEI employee and
one of the plaintiffs in the ESA Action - to support his campaign to educate the public about the
treatments of elephants at FEI's circus.

In denying the motion to add the RICO Counterclaim into the ESA Action, the Court found that FEI's proposed Counterclaim "is made with a dilatory motive, would result in undue delay, and would prejudice the opposing party." Id. (emphasis added). In particular, the Court found that the RICO Counterclaim would "result in significant additional expenses to plaintiffs," id. at 4; would likely "create a need for new counsel to pursue the [ESA] claim where no need currently exists," id. at 6; and is being used by FEI "as a tool to indefinitely prolong this litigation on a very narrow issue - whether or not defendant's treatment of its elephants constitutes a taking under the ESA." Id. at 8.

Despite this ruling, and the admonitions contained therein, three business days later FEI refiled the same Claim as a separate lawsuit, Feld Ent., Inc. v. ASPCA, No. 07-1532 (EGS) (D.D.C.) ("Second RICO Suit"). Indeed, with the exception of a few minor changes - including the remarkable allegation that the Second RICO Suit is completely "independent" and "unrelated" to the underyling ESA Action, see Complaint, ¶ 2, the Second RICO Suit contains word for word the same allegations and claims that the Court has already determined FEI is seeking to use "as a tool to indefinitely prolong" the ESA Action, Mem. Op. at 8. Compare Proposed Counterclaim with Complaint. Meanwhile, the Court has now set a December 31, 2007 cut-off for all discovery in the ESA Action. See ESA Action, Order of Aug. 23, 2007 at 11-12 (DE 178) ("Discovery Order").

By this motion, defendants request that the Court temporarily stay all proceedings in the Second RICO Suit pending a final judgment in the ESA Action. For all the reasons detailed in the Court's denial of FEI's motion to amend, permitting the Second RICO Suit to proceed at this time will seriously prejudice the ASPCA Plaintiffs' ability to pursue the ESA Action and to

2

protect the Asian elephants that are the subject of that case by diverting their attention and limited resources from that case to this one.  See Mem. Op. at 5-6.  Moreover, in addition to its dilatory motive, FEI will use its Second RICO Suit to try to obtain the same discovery that this Court recently denied to FEI in the ESA Action.  See Discovery Order.

Staying the Second RICO Suit at this time would also plainly serve the best interests of judicial economy and efficiency.  See, e.g., Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, 807 F.2d 16, 20 (1st Cir. 1986).  The testimony that the Court will hear in the ESA Action, particularly from Tom Rider, will shed significant light on whether FEI should be permitted to pursue its allegations that the ASPCA Plaintiffs and WAP have "bribed" Mr. Rider based on the bare, undisputed facts that (a) the ASPCA Plaintiffs, and others, have provided Mr. Rider with funding for his media and public education efforts, and (b) he is also a plaintiff in the ESA Action.  See, e.g.,  Bates v. Nw. Human Servs, Inc., 466 F. Supp. 2d 69, 88-89 (D.D.C. 2006)(discussing heightened pleading requirements for allegations of fraud).  Moreover, as explained below, see infra at 19-21, in the event that, at the conclusion of the ESA trial, it becomes evident that the ASPCA Plaintiffs could have pursued the ESA Action irrespective of Tom Rider's participation, then FEI will lack standing to even present the Second RICO Suit, since a RICO plaintiff must be able to demonstrate that it would not have suffered its alleged damages "but for" the alleged unlawful acts.  See, e.g., Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991, 1996-98 (2006).  Accordingly, at an absolute minimum, allowing the ESA Action to go to trial before this action proceeds will greatly simplify and elucidate any claims that may remain in the Second RICO Suit.

On the other hand, FEI will suffer no legitimate prejudice as a result of the temporary stay the ASPCA Plaintiffs and WAP are requesting. FEI's alleged RICO damages are its <u>attorneys' fees</u> from the ESA Action, as well as other unspecified money damages. Complaint, ¶¶ 169-70. FEI will still be able to seek recovery of those alleged damages after the ESA Action reaches a final judgment - should FEI have a basis for doing so. Moreover, because the Court has set a strict timetable for the completion of discovery in the ESA Action, that case should be resolved in the near future.

Finally, staying this action while the ESA Action is completed is also warranted in light of the principle that courts should, wherever possible, avoid the resolution of constitutional issues. <u>See, e.g.</u>, <u>Zobrest v. Catalina Foothills Sch. Dist.</u>, 509 U.S. 1, 7 (1993). If and when the Second RICO Suit proceeds, one of the principle defenses the ASCPA Plaintiffs and WAP will assert is that the suit is primarily designed to punish the ASPCA Plaintiffs for exercising their First Amendment rights to communicate with the public, and access the courts, concerning conditions at FEI's circus. <u>See, e.g.</u>, <u>Eastern R.R. Presidents' Conference v. Noerr Motor Freight Inc.</u>, 365 U.S. 127 (1961); <u>California Transport v. Trucking Unltd.</u>, 404 U.S. 508, 510 (1972) ("[t]he right of access to the courts is indeed but one aspect of the right of petition" protected by the First Amendment to the Constitution). Indeed, this was one of the ASPCA's principal arguments in opposition to FEI's first attempt to bring its RICO Claim. <u>See</u> ESA Action, ASPCA Plaintiffs' Opp. to Mot. to Amend ("Amend Op.") (DE 132) at 32-35. Therefore, to the extent that the resolution of the ESA Action may make it unnecessary for the Court to reach these issues, a temporary stay of this action would also be in keeping with long-standing principles of judicial administration.

**BACKGROUND**

A.    **The ASPCA Plaintiffs' ESA Action Over FEI's Mistreatment Of The Asian Elephants In Its Care**

In the ESA Action, the ASPCA, the Fund for Animals, Animal Welfare Institute, Animal Protection Institute, and Tom Rider are pursuing claims under the citizen suit provision of the ESA, 16 U.S.C. § 1540(g), concerning FEI's circus - Ringling Brothers and Barnum & Bailey - routine mistreatment of its endangered Asian elephants. Plaintiffs allege that FEI is unlawfully "tak[ing]" these animals under the ESA, which includes "harm[ing], harass[ing], and wound[ing]" protected animals. 16 U.S.C. § 1538(a); id. § 1532(19). Among other unlawful practices, plaintiffs allege that FEI employees beat and strike the elephants with sharp bull hooks; keep the elephants chained for much of the day and night; and forcibly remove baby elephants from their mothers.

FEI initially moved to dismiss the case on several grounds, including standing. The ASPCA Plaintiffs have always maintained that all of the plaintiffs have standing, including plaintiff Tom Rider, who worked for FEI with the elephants for two and a half years, formed a special bond with them, and is therefore injured by the way they are mistreated because he cannot visit them without being exposed to their mistreatment. See ASPCA v. Ringling Bros., 317 F.3d 334, 336-337 (D.C. Cir. 2003). After this Court dismissed the action on standing grounds, the D.C. Circuit ruled that Mr. Rider had sufficiently alleged his standing, and remanded the case for further proceedings. Id. at 338–39. The D.C. Circuit did not address the standing of the other plaintiffs. Id.

Following further developments not relevant to the present motion, this Court entered a discovery schedule in the ESA Action. However, as the Court knows, discovery was delayed for years due to FEI's failure to comply with discovery requests. See, e.g., ESA Action, Order of Sept. 26, 2006 (DE 94) (enforcing prior discovery Order).

As a result of discovery, and through other means, the ASPCA Plaintiffs have continued to collect evidence of FEI's ongoing violations of the ESA, including, inter alia, videotape and additional eyewitness testimony of elephant handlers striking elephants with bull hooks and using a "hot shot" (a device that inflicts a strong electric shock); elephants chained for hours at a time; and mother elephants chained on concrete floors while in labor, and separated from their babies the moment they are born. See generally Amend Op. at 19-21 (providing citations). In addition, four more recent FEI employees have testified that they have observed elephants routinely struck with bull hooks and kept in chains for hours on end. Id. at 21.

**B.    Tom Rider's Media and Public Education Efforts**

In addition to being a plaintiff in the ESA Action, over the past few years Tom Rider has been criss-crossing the country conducting a highly effective media, public education, and grassroots advocacy effort to educate the public about FEIs' treatment of its elephants. Funds to make these efforts possible have been provided by the ASPCA Plaintiffs, by many other organizations and individuals and by WAP, a non-profit organization established by two of the ASPCA Plaintiffs' counsel - Katherine Meyer and Eric Glitzenstein - to complement the public-interest litigation pursued by their law firm by supporting the efforts of grass-roots activists like Mr. Rider to educate the public about conditions facing both wild and captive animals. See http://www.wildlifeadvocacy.org/programs.

6

Accordingly, as previously detailed by the ASPCA Plaintiffs, these funds have been used by Mr. Rider to travel around the country - first on a Greyhound bus, and then in a used van - to where the circus is performing and to other media, legislative, and grassroots forums.  As part of these efforts, Mr. Rider has talked to a host of reporters, animal welfare groups, and legislative bodies about his experiences during the years he worked for FEI and the additional information he has since learned.  See generally Amend Op. at  26-30 (providing citations).  He has been featured in myriad national and local television and radio news programs covering this issue; has been quoted in dozens of newspaper articles; and has appeared in numerous articles appearing on the Internet.  Id.  He has also testified before the U.S. Congress and other legislative bodies, appeared at press conferences in support of pending legislation in several states, and has spoken before many grassroots groups about his experiences at FEI.  Id.  Without the funding provided for his travel and living expenses over more than six years, none of this would have been possible.

**C.**     **FEI's Prior Efforts To Delay The ESA Action**

In addition to the failure to produce relevant discovery, FEI has also engaged in numerous other tactics to delay bringing the ESA Action to trial, such as accusing the ASPCA Plaintiffs of violating discovery obligations (two years after receiving the discovery responses),[2] and moving to compel discovery from WAP, which was served a third-party subpoena for records concerning grants to Tom Rider.  ESA Action, Mot. To Compel Documents Subpoenaed from WAP (DE 85).  In yet another transparent delay tactic, in February 2007 - long after FEI learned of Tom

---

[2]     See, e.g., ESA Action, Mot. to Compel Disc. from Tom Rider (DE 126); Mot. to Compel Disc. of Org. Plfs. (DE 149).

Rider's activities and the funding of them, and, indeed, more than a year and a half after plaintiffs' counsel had voluntarily advised the Court about these activities, see Mem. Op. at 7 - FEI filed a motion to amend its Answer in the ESA Action to add a Counterclaim under RICO, 18 U.S.C. § 1961, et seq., against the ASPCA Plaintiffs and the WAP, and to assert the defense of "unclean hands." FEI's theory was that the organizational Plaintiffs and WAP have been "bribing" Tom Rider to lie in his standing and other testimony. See Proposed Counterclaim. The sixty-five page Proposed Counterclaim detailed funds the ASPCA Plaintiffs and WAP have provided to Mr. Rider over the years - information that was produced by the ASPCA Plaintiffs and WAP in discovery - and asserted that none of this funding was in fact being used for Mr. Rider's public education efforts, id., ¶ 73, despite the fact that FEI is extremely aware of Mr. Rider's highly effective media and public education efforts. See, e.g., Amend Op., Ex. 48 (FEI email discussing Mr. Rider's activities).

The ASPCA Plaintiffs opposed FEI's motion, explaining, inter alia, that the RICO claim was legally and factually baseless, and barred by well-established constitutional principles, and that, at minimum, the Court should await the outcome of the ESA Action before permitting the RICO claim to go forward, since the deficiencies in FEI's claims would only become more evident once the underlying case went to trial. See Amend Op. at 31-50. Plaintiffs also argued that an unclean hands defense is unavailable in this kind of suit. Id. at 51-54.

**D.**    **Recent Developments In The ESA Action**

On August 23, 2007, this Court ruled on a number of outstanding issues in the ESA Action. The Court granted a motion by the ASPCA Plaintiffs to inspect FEI's elephants and referred the resolution of the parameters of that inspection to Judge Facciola. See Discovery

Order.  While the Court also required the ASPCA Plaintiffs to provide some additional discovery

concerning the actual amounts of funding of Mr. Rider, the Court ruled that they "need not

produce documents or further information related to any media or legislative strategies or

communications . . .." Id. at 7.  The Court also held that FEI had submitted a seriously overbroad

subpoena to WAP that sought "a lot of information that is completely irrelevant to the 'taking'

claim in this lawsuit, the credibility of Tom Rider, or any claimed defenses." Id. at 8.

On the same day, the Court also denied FEI's motion to amend and add the Proposed

RICO Counterclaim.  Mem. Op. at 9 (Def. Ex. 1).  Noting that the Proposed Counterclaim was

filed "three and a half years after filing their original answer in this case and almost seven years

after the central issues in this case were first brought to the Court's attention," id. at 1 (emphasis

added), the Court found that "defendants' request to amend its answers to add a RICO

counterclaim is made with a dilatory motive, would result in undue delay, and would prejudice

the opposing party." Id. at 4 (emphasis added).  In particular, the Court explained that

"[d]iscovery in this case has been going on for more than three and a half years"; that "the issues

in this case have been narrowed"; and that permitting the claim to go forward "would sidetrack

this litigation away from the remaining, narrowed 'taking' claim that is the central focus of this

litigation." Id. at 4, 6.  Moreover, the Court found that FEI's effort to "inject a claim involving

an elaborate corruption scheme" would "not only dramatically change the nature of the litigation

but would also result in significant additional expenses to plaintiffs in pursuing their ESA claim."

Id. at 4-5; see also id. at 6 ("The far-reaching nature of defendants' RICO claim would likely

require substantial additional evidence - including, at a minimum, numerous additional

documents and depositions - beyond the evidence already produced on payments to Tom Rider. . . .").

In addition, the Court recognized that permitting the claim to proceed would require Plaintiffs to "devote substantial resources to defending against a RICO claim," and that, in light of defendant's specific allegations against the ASPCA Plaintiffs' counsel, would be "highly prejudicial to plaintiffs[*] [ ] pursuit of their ESA claim," because it would likely "create a need for new counsel to pursue the 'taking' claim." Id. at 6-7. "Finally," the Court concluded:

> the Court cannot ignore the fact that defendant has been aware that plaintiff Tom Rider has been receiving payments from the plaintiff organizations for more than two years. Although defendant alleges an 'elaborate cover-up' that prevented it from becoming 'fully aware of the extent, mechanics, and purpose of the payment scheme until at least June 30, 2006,' Def.'s Mot. to Amend at 4, such a statement ignores the evidence in this case . . . .

Id. (emphasis added). In short, the Court concluded that it "will not allow a proposed counterclaim to be used as a tool to indefinitely prolong this litigation on a very narrow issue - whether or not defendant's treatment of its elephants constitutes a taking under the ESA." Id. at 8.[3]

Finally, the Court set a tight schedule for the completion of discovery in the ESA Action, directing that all fact and expert discovery must be completed by December 31, 2007, and that the parties must file recommendations for further proceedings by January 15, 2008. See Discovery Order at 11-12. The parties in the ESA Action recently met with Judge Facciola to

---

[3] The Court also denied defendants' request to inject an unclean hands defense into the ESA Action, finding that defendants' delay in raising the defense "provides strong evidence of a dilatory motive aimed at prolonging the ultimate disposition of the one issue in this case," and that, in any event, "the unclean hands defense is not a proper defense in a citizen suit seeking an injunction to prevent a 'take' under Section 9 of the ESA." Id. at 9.

address the inspection and other issues, and it is apparent that enormous efforts will have to be made to meet the Court's discovery schedule.  See ESA Action, Order of Sept. 25, 2007 (DE 195).

On August 29, 2007, the ASPCA Plaintiffs filed a motion to add as plaintiffs to the ESA Action three individuals, all of whom recently left the employment of Ringling Brothers' circus and who are already participating as fact witnesses in the ESA Action.  ESA Action, Pl. Mot. To File Supp. Cmplt. ("Supp. Mot.") (DE 181).  Each of these individuals, like Tom Rider, worked for FEI, formed close bonds with the FEI elephants, and witnessed FEI's mistreatment of these animals.  Id.  That motion has been fully briefed by the parties and remains pending before the Court.

**E.     FEI's Second RICO Suit**

Three business days after the Court denied the motion to amend to add the RICO Counterclaim into the ESA Action, FEI refiled the same Claim as a separate lawsuit in this Court.  See Second RICO Suit.  As with the Proposed Counterclaim, the Second RICO Suit names the ASPCA Plaintiffs and WAP, and details the grants that have been provided to support Tom Rider's media and public education efforts.  See, e.g., id. at 22-27.  The Second RICO Suit then alleges that "Rider's alleged eye-witness accounts of Ringling Brothers' mistreatment of elephants are fraudulent," and that the grants "actually fund Rider's continued participation in the ESA Action as a paid plaintiff and key fact witness," "and not his 'media and public education

efforts.'" Id. ¶ 73 (emphasis added).[4]  FEI also claims as a basis for its Second RICO Suit alleged discovery violations in the ESA Action.  See, e.g., Id. ¶¶ 154-161.

Based on these allegations, the Second RICO Suit asserts claims under RICO and the Virginia Conspiracy Act.  Id. ¶¶ 171-197.  For both claims, FEI identifies its costs associated with defending the ESA action as the only specific damages it has suffered.  Id. ¶¶ 169-70.

Despite the fact that, in seeking to assert the Proposed RICO Counterclaim into the ESA Action, FEI had argued that "the conduct underlying FEI's RICO . . . allegations now cannot be separated from the ESA action," ESA Action, Def. Reply in Support of Motion to Amend at 2-3 (DE 142)(emphasis added), in now refiling that claim as a separate lawsuit FEI has alleged that its Second RICO Suit is somehow "unrelated" to the ESA Action on which it is expressly predicated.  Complaint ¶ 2.  Indeed, on its Civil Cover Sheet FEI's counsel declined to designate the ESA Action and the Second RICO Suit as "related" cases.  See Complaint, Att. 1.  Nevertheless, the Second RICO Suit was assigned to this Court.

## ARGUMENT

It is well-established that courts possess the inherent authority to stay proceedings in the interests of judicial economy and efficiency.  Airline Pilots Assn v. Miller, 523 U.S. 866, 879 n.6 (1998).  As the Supreme Court has explained, "'[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  Id., quoting Landis v. North

---

[4]        FEI renewed these allegations even though in April, 2007, FEI had alleged that Tom Rider had acted improperly by using certain discovery obtained in this litigation as part of his media efforts, see ESA Action, Plfs. Mot. under Rule 11 (DE 163), Ex. 2  - which is hardly consistent with FEI's allegation that those media efforts do not exist.

Am. Co., 299 U.S. 248, 254 (1936); see also SEC v. Dresser Inds., 628 F.2d 1368, 1375 (D.C.

Cir. 1980) (en banc) ("a court may decide in its discretion to stay civil proceedings, postpone

civil discovery, or impose protective orders and conditions when the interests of justice seem to

require such action") (other citations and internal quotations omitted).  In considering a stay

request, the court should consider (a) the prejudice to the moving party if the case moves

forward; (b) judicial efficiency; and (c) any prejudice the stay may cause to the non-moving

party.  See, e.g., CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 136 (3rd Cir.

2004).

Here, these factors weigh heavily in favor of staying FEI's Second RICO Suit pending a

final resolution of the ESA Action.  Permitting the Second RICO Suit to go forward at this time

will plainly cause severe prejudice to the ASPCA Plaintiffs' ability to litigate the ESA case and

to meet the Court's deadlines for that case; a stay would plainly serve the interests of judicial

economy and efficiency, since the disposition of the ESA Action will have a significant - and

likely dispositive - impact on the Second RICO Suit; and, particularly since FEI seeks money

damages, a stay will not cause FEI any prejudice.

**A.      Permitting the Second RICO Suit To Proceed At This Time Will Severely
         Prejudice The ASPCA Plaintiffs' Prosecution of the ESA Action.**

In denying FEI's motion to add its RICO Claim into the ESA action, this Court

emphasized the severe prejudice that the RICO Claim would have on the ASPCA Plaintiffs'

ability to timely pursue the ESA Action.  Thus, the Court explained that:

> Given that defendants' proposed RICO claim involves all the plaintiffs, their
> counsel, and a non-party, alleges a number of predicate criminal acts, and alleges
> an elaborate scheme, including cover-ups, the Court rejects defendant's argument
> that any additional discovery would not be unduly burdensome to plaintiffs.  The

far-reaching nature of defendant's RICO claim would likely <u>require substantial additional evidence - including, at minimum, numerous additional documents and depositions - beyond the evidence already produced on payments to Tom Rider, as defendant's alleged scheme is not limited simply to those payments.</u>

Mem. Op. at 5-6 (Def. Ex. 1)(emphasis added).  Consequently, the Court concluded that if FEI's

RICO Claim and unclean hands defense were allowed to proceed, "Plaintiffs would be required

to devote <u>substantial resources</u> to defending against a RICO claim rather than bringing their

'taking' claim to trial," <u>id.</u> at 6 (emphasis added), which would also not serve "the overriding

public policy in favor of protecting the animals from unlawful harassment or harm that

constitutes an impermissible 'take' under Section 9 of the ESA."  Mem. Op. at 11.

Indeed, in light of the significant impact that pursuit of the Proposed RICO Counterclaim

would have on the ASPCA Plaintiffs' ability to pursue the ESA Action, and the fact that FEI

"has been aware" of the facts that form the basis for the RICO claim "for more than <u>two years</u>,"

<u>id.</u> at 7, the Court concluded that FEI had presented the RICO claim "with a dilatory motive," <u>id.</u>

at 4, and emphasized that the Court "will not allow a proposed counterclaim to be used <u>as a tool

to indefinitely prolong this litigation on a very narrow issue</u>." <u>Id.</u> at 8 (emphasis added).[5]

These same considerations counsel heavily in favor of staying the Second RICO Suit at

this time.  Indeed, since the Second RICO Suit is almost <u>word for word</u> the same document that

---

[5]       The Court also recognized that, in seeking to add WAP - whose officers include plaintiffs' counsel Katherine Meyer and Eric Glitzenstein - FEI threatened to further prejudice the ASPCA Plaintiffs, and delay the ESA action, by forcing plaintiffs' own attorneys to devote their time and resources to the RICO claim rather than the ESA Action. <u>Id.</u> at 6.  Indeed, although FEI knows that WAP is not the only third-party organization - not a party to the ESA Action - which has provided funding to Tom Rider, WAP stands alone as the single such third-party organization that FEI has chosen to target as an additional defendant in its RICO claims.  Such selectivity readily reveals that FEI's RICO claim is focused on WAP as a means to distract ASPCA's counsel from the ESA Action

FEI previously sought to file as a Counterclaim, there can be no dispute that the motive the Court discerned for the proposed Counterclaim is equally present here:  FEI has filed the Second RICO Suit in yet another effort to divert the ASPCA Plaintiffs and their counsel from the ESA Action, and to try to avoid, or at least sidetrack, the Court's upcoming decision on whether FEI's treatment of its Asian elephants violates the ESA.

Accordingly, the prejudice and dilatory motive that the Court deemed sufficient bases to deny FEI's motion to add the RICO claim into the ESA Action are also grounds for staying the Second RICO Suit.  See, e.g., Landis, 299 U.S. at 254 (explaining that "time and effort for itself, for counsel, and for litigants" is relevant to a court in resolving motion for stay)(emphasis added).  In short, in light of FEI's motive, and the severe prejudice the ASPCA Plaintiffs would suffer were the Court to permit the Second RICO Suit to go forward now (including, inter alia, discovery by FEI to obtain  "substantial additional evidence," Mem. Op. at 5-6), the Court should stay the Second RICO Suit until after the trial in the ESA Action is concluded.

Indeed, in light of the Court's other recent rulings in the ESA Action, it is evident that the upcoming few months are the worst possible time for the ASPCA Plaintiffs and their counsel to be distracted by the Second RICO Suit.  The Court has recently directed that (a) the ASPCA Plaintiffs negotiate and undertake their inspection of FEI's elephants; (b) fact discovery will close in three months; (c) expert discovery will also close in three months; and (d) a schedule for further proceedings - which the ASPCA Plaintiffs anticipate will include a request for a speedy trial date - is due several weeks later.  See Discovery Order.  In order to meet these deadlines - let alone address any remaining motions practice concerning discovery - the ASPCA Plaintiffs and their counsel will be devoting substantial attention to the ESA Action in the coming few months.

Accordingly, it is appropriate for the Court to stay the Second RICO Suit until the ESA Action is concluded, to permit the ASPCA Plaintiffs to timely pursue their claims, and to prevent FEI from using its Second RICO Suit in the same manner it tried to use its proposed RICO Counterclaim - i.e., as a tool to "indefinitely prolong" the ESA Action. Mem. Op. at 8.

Moreover, in its recent decisions in the ESA Action this Court also ruled that "documents, communications, or information concerning the media and legislative strategies of the plaintiffs are irrelevant to the claims and defenses in this case and would be over burdensome to produce." See Discovery Order at 5. This, of course, is precisely the same information FEI will seek to obtain from the ASPCA Plaintiff and WAP (and the ASPCA Plaintiffs' counsel) in pursuit of its Second RICO Suit, especially in light of FEI's allegation that Tom Rider's public education activities are fictitious. See, e.g. Complaint, ¶ 73. The Court should not permit FEI to press its Second RICO Suit in order to effect an end-run around the Court's recent discovery rulings and restrictions.

**B    A Stay Of The Second RICO Suit Would Also Best Serve
Judicial Economy And Efficiency.**

A temporary stay would also be in the bests interests of judicial economy, for several interrelated reasons. Since Tom Rider will be a witness in the ESA Action, and the Second RICO Suit centrally concerns Mr. Rider's credibility (i.e., is he participating because he cares about the way the elephants are mistreated and seeks to alleviate their suffering, or because he is a "bribed" witness?), the Court will be in a far better position to assess the sufficiency of FEI's allegations in the Second RICO Suit once the ESA Action is completed. If the Court doubts the credibility of Mr. Rider's testimony regarding either what he witnessed while working at the

16

circus, or the close relationships he developed with the elephants in his care, then at that time the Court may determine whether to permit the Second RICO Suit to proceed.  Of course, by that time, the Court will also have had an opportunity to assess all of the other evidence upon which the plaintiffs will seek to demonstrate the validity of their claims - completely unrelated to Mr. Rider's testimony - and to also judge the standing of all other plaintiffs in the case.  In short, if the Court concludes that Mr. Rider's testimony is credible (and, indeed, is corroborated by the other testimony and evidence), then that will raise serious questions as to whether FEI has sufficiently pled a claim under RICO.

Thus, in light of the heightened pleading requirements for the fraud allegations contained in the Second RICO Suit, the ESA Action will permit the Court to assess whether to permit FEI to pursue its allegations that the ASCPA Plaintiffs and WAP have paid Tom Rider for his participation and testimony, based on the bare facts that he <u>is</u> a plaintiff and witness, and he <u>has</u> received funds from the ASPCA Plaintiffs and WAP in support of his media and public education efforts.  <u>See, e.g.</u>, <u>U.S. v. Marin-Baker Aircraft Co.</u>, 389 F.3d 1251, 1256 (D.C. Cir. 2004)  (explaining that Federal Rule 9(b)'s particularity requirement "'discourages the initiation of suits brought solely for their nuisance value, and safe guards potential defendants from frivolous accusations of moral turpitude"),  <u>quoting</u> <u>U.S. ex rel. Joseph v. Cannon</u>, 642 F.2d 1373, 1385 (D.C. Cir. 1981).

FEI's threshold responsibility to plead facts sufficient to support the fraud charges is particularly acute here, where the allegations concern the defendants' constitutionally-protected exercise of First Amendment rights to petition legislatures, advocate to the public, and access the courts.  <u>See, e.g.</u>, <u>Sosa v. DIRECTV</u>, 437 F.3d 923, 929 (9th Cir. 2006) (applying First

17

Amendment principles, and consequent heightened pleading requirements, to RICO claim); <u>see</u> <u>also</u> <u>Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127, 137 (1961) (citizens enjoy a First Amendment right to "inform the government of their wishes"); <u>California Transport v. Trucking Unlimited</u>, 404 U.S. 508, 510 (1972) (discussing constitutionally-protected "right of access to the courts"); <u>NAACP v. Alabama</u>, 357 U.S. 449, 466 (1958); <u>Int'l Action Ctr. v. United States</u>, 207 F.R.D. 1, 2 (D.D.C. 2002); <u>Wyoming v. U.S. Dept of Agric.</u>, 208 F.R.D. 449, 455 (D.D.C. 2002); <u>FEC v. Machinists Non-Partisan Political League</u>, 655 F.2d 380, 388 (D.C. Cir. 1981). Once again, although defendants certainly maintain that, even at present, it is evident that FEI's current allegations are not sufficient to proceed with the Second RICO Claim, the Court will be in a much better position to assess the threshold adequacy of those allegations once Tom Rider, and the other witnesses in the ESA Action, have testified.

Indeed, the mere presence of these Constitutional issues also counsels in favor of a stay at this time, in light of the well-established principle that a court should avoid constitutional issues whenever possible. <u>See</u> <u>Zobrest v. Catalina Foothills School Dist.</u>, 509 U.S. 1, 7 (1993). Thus, rather than resolving whether the Second RICO Suit should be dismissed as an unconstitutional effort to punish defendants for exercising their First Amendment rights to bring the ESA Action, and to advocate their position to both the public and legislative bodies, the Court is likely to be in a position to avoid that issue altogether after the ESA Action is completed.

In particular, in <u>Anza v. Ideal Steel Supply Corp.</u>, the Supreme Court recently reiterated that, in order for a plaintiff to even <u>pursue</u> a civil RICO action, it must be able to demonstrate that it would not have suffered the alleged damages "but for" the alleged RICO violations. 126 S.

18

Ct. at 1998. Where the injury is "not the direct result of a RICO violation," the Court explained, no RICO claim will lie, for otherwise the courts would be forced to undertake complicated liability allocations to determine "which portion" of the plaintiff's injuries are "attributable to the alleged pattern of racketeering activity." Id.; see also id ("the element of proximate causation recognized in Holmes [v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992)], is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation"). Thus, in Anza, the court dismissed the plaintiff's claim because, under no circumstances would the plaintiff be able to demonstrate that its alleged damages were caused solely by the alleged RICO violations. 126 S. Ct. at 1998.

Applying those principles here, it is evident that it is premature to even consider whether FEI's alleged RICO violations are the "but for" cause of its alleged damages. Those damages are the attorneys' fees FEI is incurring in the ESA Action. See Complaint, ¶¶ 169-70. Accordingly, to pursue the Second RICO Suit, FEI must be able to demonstrate that the only reason the ESA Action is going forward is because of the alleged "elaborate corruption scheme," Mem. Op. at 5, at issue in the Second RICO Suit. If, on the other hand, the Court concludes that the alleged "scheme" is not the sole cause of FEI's having to defend the ESA Action, then FEI has no standing to pursue the RICO Claim. See Evans v. City of Chicago, 434 F.3d 916, 924 (7th Cir. 2006) ("whether an alleged RICO injury was caused 'by reason of' a violation of the statute – has also been considered a component of standing"), citing Beck v. Prupis, 529 U.S. 494 (2000).

Yet, that issue is likely to be resolved, or, at bare minimum, significantly narrowed, once the ESA Action is concluded. Thus, with regard to FEI's allegation that Tom Rider really has no standing to bring the ESA Action, but is simply being "bribed" to say that he does, the Court may

of course determine that the other plaintiffs in the ESA Action have standing <u>irrespective</u> of Tom

Rider, since the ESA Action can proceed as long as the Court finds that any <u>one</u> of the plaintiffs

has standing.  <u>See, e.g.</u>, <u>Mass v. EPA</u>, 127 S. Ct. 1438, 1453-54 (2007)(reiterating that a coalition

of plaintiffs need only demonstrate that one plaintiff has standing to sue).[6]

 In sum, because it will not become clear whether Mr. Rider's testimony is the "but for"

cause of the ESA Action until the case is concluded, it would certainly conserve judicial

resources to stay the Second RICO Suit until that time.  <u>See</u> <u>Evans</u>, 434 F.3d at 933, n.27 (no

RICO claim where plaintiff "has not established that the attorneys' fees he incurred <u>were caused</u>

<u>by a predicate act</u> within the meaning of the RICO statute")(emphasis added); <u>Miller Hydro</u>

<u>Group v. Popovitch</u>, 851 F. Supp. 7, 14-15 (D. Me. 1994)(no RICO claim seeking attorneys fees

where "a proximate-cause analysis indicates that [the] legal fees stemmed from [plaintiff's]

decision to file a breach-of-contract action").

 Moreover, to the extent FEI is claiming damages as a result of Tom Rider's eye-witness

testimony concerning FEI's mistreatment of the elephants (and not merely his standing), <u>see</u>

Second RICO Suit, ¶¶ 127-33, the ASPCA Plaintiffs intend to present at trial numerous

witnesses and voluminous exhibits - including videotapes and FEI's own internal documents - to

demonstrate that FEI's treatment of its Asian elephants violates the ESA.  If, after hearing all that

testimony, and reviewing all of the ASPCA Plaintiffs' evidence, this Court concludes that its

---

   [6] Not only have the four organizational plaintiffs alleged their own standing in this
case, <u>see</u> ESA Complaint, ¶¶ 3-17, but, as explained above, <u>see supra</u> at 11, the Court currently
has before it a motion to supplement the Complaint by adding three additional plaintiffs - all of
whom more recently worked for Ringling Brothers, and all of whom allege the same kind of
injury that the D.C. Circuit upheld as sufficient for Article III standing purposes.  <u>See</u> Supp.
Mot.; <u>see also</u> 317 F.3d at 336-37.

resolution of the ESA Action does not rise or fall on the testimony of Tom Rider, then, again, FEI will have failed the "but for" causation requirement for its allegations of damages as a result of Tom Rider's witness testimony.  See  Am. Special Risk Ins. Co v. Greyhound Dial Corp., No. 90-2066, 1997 WL 115637, *1 (S.D.N.Y. Mar. 14, 1997)(where allegedly bribed witness testimony was not the proximate cause of the alleged injury, there is no RICO claim).

Many other Courts have similarly stayed RICO proceedings where the disposition of related litigation may resolve or, at least, "could serve to clarify and perhaps even simplify the remaining issues which must be litigated."  Sevinor, 807 F.2d at 20, quoting Home Life Ins. Co. v. Kaufman, 547 F. Supp. 833, 836 (S.D.N.Y. 1982).  Thus, for example, in Sevinor, the First Circuit, explaining that "there is no federal statute mandating that district court action on the RICO claim proceed," upheld the district court's stay where "it was in the interest of both efficiency and judicial economy that the civil RICO proceedings be stayed" pending other proceedings.  807 F.2d at 20; see also S.A. Minercao Da Trindade-Samitri v. Utah Intl, Inc., 745 F.2d 190, 196 (2d Cir. 1984) (upholding stay pending arbitration).

Similarly, Judge Urbina stayed a suit in light of related proceedings on the grounds that those proceedings "may reorient the parties' arguments, may catalyze a settlement of this matter, may moot the defendants' motion to dismiss, or may resolve the issued raised in this lawsuit in their entirety."  IBT/Here Employee Rep. Council v. Gate Gourmet Div. Am., 402 F. Supp. 2d 289, 292-93 (D.D.C. 2005).  That precise reasoning applies to this case as well.  See also Abbey v. Modern Africa One, LLC, 305 B.R. 594, 609 (D.D.C. 2004) (staying action pending outcome of other suit, the resolution of which "will impact each of" the claims in the stayed case); Cohen v. Carreon, 94 F. Supp. 2d 1112, 1118-20 (D. Or. 2000)(stay appropriate where resolution of

21

other claims will simplify or eliminate RICO claims, while permitting them to proceed would prejudice other party by generating potential conflicts of interest and permitting "a second chance at discovery"); <u>Terra Nova Ins. Co. Ltd. v. Distefano</u>, 663 F. Supp. 809 (D.R.I. 1987) (staying RICO claim pending resolution of other proceedings); <u>Cullen v. Paine Webber Group, Inc.</u>, 689 F. Supp. 269 (S.D.N.Y. 1988) (staying RICO claim pending arbitration); <u>Shaw v. Williams</u>, 676 F. Supp. 168 (N.D. Il. 1987)(staying RICO claim pending state court proceedings); <u>Spencer v. Agency Rent-a-Car, Inc.</u>, No. 81-2097-S, 1981 WL 1707, *4 (D. Mass. Nov. 17, 1981) (staying RICO claim because "prudent and economical case management requires that courts insist that the plaintiff show that the defendant has caused it legally compensable injury before it be allowed to expand the case").

Accordingly, because the resolution of the ESA action may substantially narrow or even resolve the matters at issue in the Second RICO Suit, it would serve the interests of judicial efficiency and economy for the Court to Stay the Second RICO Suit at this time.

**C.    Staying The Second RICO Suit Until After The ESA Action Goes To Trial Will Not Prejudice FEI.**

Finally, FEI cannot demonstrate that a stay will in any manner prejudice its legitimate interests. If FEI chooses to pursue its "damages" in the Second RICO Suit - <u>i.e.</u>, its legal fees in the ESA Action - after the trial in the ESA Action is concluded, it may attempt to do so, and it will be in no worse position in pursuing its claim then than it would be for pursuing them at this time. Indeed, it will be in a far <u>better</u> position, because FEI is still incurring fees in the ESA

Action, and thus, it is premature at this time for FEI to calculate its purported "damages," even based on its own theory of liability.[7]

Accordingly, FEI will suffer no legitimate  prejudice from the temporary stay sought here

## CONCLUSION

For the foregoing reasons, the ASPCA Plaintiffs and WAP respectfully request that the Court grant this motion to stay, and stay this suit until after the trial in the ESA Action..

Respectfully submitted,

/s/   Howard M. Crystal
Howard M. Crystal (D.C. Bar No. 446189)
Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W.,  Suite 700
Washington, D.C.  20009
(202)  588-5206

Counsel for the ASPCA Plaintiffs

/s/   Stephen L. Braga
Stephen L. Braga (D.C. Bar No. 366727)
Emma Kuntz (D.C. Bar. No. 501210)

Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 639-7704

September 25, 2007                     Counsel for the Wildlife Advocacy Project

---

[7]     While FEI's Complaint requests preliminary injunctive relief, FEI should not be permitted to pursue injunctive relief under RICO.  See, e.g., Religious Tech. Ctr. v. Wollersheim, 796 F.2d 1076, 1087 (9th Cir. 1986)("Congress did not intend to give private civil RICO plaintiffs access to equitable remedies"); Sterling Suffolk Racecourse Ltd P'ship v. Burrillville Racing Ass'n, Inc., 802 F.Supp. 662, 670 (D.R.I. 1992) (there exists "no right to injunctive relief under the RICO statute"), aff'd 989 F.2d 1266 (1st Cir. 1993).  Moreover, if in fact FEI intends to seek emergency relief in the Second RICO Suit at this time, that would only further prejudice the ASPCA Plaintiffs' pursuit of the ESA Action, and would even further demonstrate the dilatory tactics that are behind this new suit.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
AMERICAN SOCIETY FOR THE      )
PREVENTION OF CRUELTY         )
TO ANIMALS, et al.,           )
                              )
        Plaintiffs,           )
                              )
    v.                        )   Civ. Action No. 03-2006 (EGS)
                              )
RINGLING BROTHERS AND BARNUM  )
& BAILEY CIRCUS, et al.,      )
                              )
        Defendants.           )
_____)
```

**<u>MEMORANDUM OPINION</u>**

    Pending before the Court is defendant Feld Enterntainment, Inc.'s ("FEI") Motion for Leave to Amend Answers to Assert Additional Defense and Counterclaim.  Upon consideration of the motion, response and reply thereto, applicable law, and the entire record, the Court **denies** defendant's motion.

**I.    BACKGROUND**

    On February 28, 2007, three and a half years after filing their original answer in this case and almost seven years after the central issues in this case were first brought to the Court's attention in a companion case, *see ASPCA v. Ringling Bros. and Barnum and Bailey Circus*, No. 00-1641, defendant filed a motion for leave to amend its answers to assert an additional defense and a counterclaim.

Defendant seeks to amend its answer to plaintiffs' complaint and answer to plaintiff Animal Protection Institute's ("API") supplemental complaint in order to (1) assert the affirmative defense of unclean hands; and (2) assert a counterclaim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and the Virginia Conspiracy Act, Va. Code Ann. § 18.2-499-500, against the current plaintiffs.  Defendant also seeks to add the Wildlife Advocacy Project ("WAP") as a party to its counterclaim pursuant to Federal Rule of Civil Procedure 13(h).

## II.  ANALYSIS

### A.   Standard of Review

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, once a responsive pleading has been served, "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice requires."  Fed. R. Civ. P. 15(a).  The grant or denial of leave to amend is committed to the discretion of the district court.  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  It is an abuse of discretion, however, to deny leave to amend without sufficient reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"The most important factor the Court must consider when deciding whether to grant a motion for leave to amend is the possibility of prejudice to the opposing party." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) (citing Wright, Miller, & Kane, *Federal Practice and Procedure*, § 1487 (2d ed. 1990)). The Court may deem prejudicial an amendment that "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation." *Id*. (citing Wright, Miller, & Kane § 1487). The Court may also deny leave to amend where the non-moving party would be put to the additional expense and burden of a more lengthy and complicated trial or where the issues raised by the amendment are remote to the issues in the case. *Id*. Moreover, even though delay alone is an insufficient basis to deny a motion to amend if there is no prejudice to the opposing party, the length of delay between the last pleading and the amendment sought is a factor in considering bad faith or dilatory motive. *Id*.

## B.    RICO Counterclaim

Defendant's RICO counterclaim is based on an alleged elaborate scheme by the organizational plaintiffs and Tom Rider to ban Asian elephants from circuses and defraud FEI of money and

property.  The scheme involves paying Tom Rider for his
participation as a key fact witness in this lawsuit, paying Tom
Rider for his testimony as a legislative witness, false discovery
responses and cover-ups amounting to an obstruction of justice,
mail fraud, and wire fraud.  Defendant alleges that its
counterclaim is based on evidence it has obtained through
discovery in the Endangered Species Act ("ESA") action.
Defendant further alleges that this scheme has been going on
since at least May 2001 but that defendant was not fully aware of
the extent, mechanics, and purposes of the scheme until at least
June 2006.

In this case, the Court finds that defendant's request to
amend its answers to add a RICO counterclaim is made with a
dilatory motive, would result in undue delay, and would prejudice
the opposing party.  Discovery in this case has been going on for
more than three and a half years and defendant has already filed
a motion for summary judgment.  Although the Court did not
resolve the motion for summary judgment prior to defendant's
motion to amend, the motion for summary judgment has now been
decided and the issues in this case have been narrowed.  Very
limited discovery remains only as a result of the parties'
failure to be able to resolve discovery disputes without
intervention of the Court.  Defendant now seeks to inject a claim
involving an elaborate corruption scheme into a case that is

winding down.  Moreover, fact discovery in this case was
originally scheduled to close on December 20, 2004 and expert
discovery was set to close on March 4, 2005.  *See* Stipulated Pre-
trial Schedule (Dec. 5, 2003); Consent Motion to Amend Pre-trial
Schedule (Sept. 7, 2004); Order (Sept. 8, 2004) (granting consent
motion).  As a result of defendant's failure to timely produce
thousands of pages of veterinary records, the Court allowed
discovery to continue in this case.  The case is now in a posture
where discovery can soon be closed and the case can be set for
trial on the "taking" claim.

     The focus of the only claim in this case is whether or not
defendant's treatment of its elephants constitutes a taking
within the meaning of Section 9 of the ESA.  Any limited
information about payments to or the behavior of Tom Rider that
defendant is entitled to in order to challenge to credibility of
<u>one</u> plaintiff in this case is far different from the vast amount
of information they would be seeking under the guise of
attempting to prove an alleged RICO scheme.  Allowing defendant
to assert a RICO counterclaim at this time would not only
dramatically change the nature of the litigation but would also
result in significant additional expenses to plaintiffs in
pursuing their ESA claim.  Given that defendant's proposed RICO
claim involves all the plaintiffs, their counsel, and a non-
party, alleges a number of predicate criminal acts, and alleges

an elaborate scheme, including cover-ups, the Court rejects

defendant's argument that any additional discovery would not be

unduly burdensome to plaintiffs.  The far-reaching nature of

defendant's RICO claim would likely require substantial

additional evidence – including, at a minimum, numerous

additional documents and depositions – beyond the evidence

already produced on payments to Tom Rider, as defendant's alleged

scheme is not limited simply to these payments.  As no discovery

in this case over the last three and a half years has been

"pointed and efficient," there is no reason for the Court to find

that discovery on the RICO claim would be anything but burdensome

and lengthy.  Moreover, such discovery would sidetrack this

litigation away from the remaining, narrowed "taking" claim that

is the central focus of this litigation.  Plaintiffs would be

required to devote substantial resources to defending against a

RICO claim rather than bringing their "taking" claim to trial.

     In addition, defendant seeks as part of its counterclaim to

add WAP as a party.  Defendant alleges that WAP is the alter ego

of plaintiffs' counsel and that improper payments to Tom Rider

have been funneled through WAP.  Allowing a counterclaim to go

forward that alleges plaintiffs' counsel's involvement in

improper payments would likely involve depositions of plaintiffs'

counsel and create a need for new counsel to pursue the "taking"

claim where no need currently exists.  Such a turn in the

litigation would also be highly prejudicial to plaintiffs in
pursuit of their ESA claim.

Finally, the Court cannot ignore the fact that defendant has
been aware that plaintiff Tom Rider has been receiving payments
from the plaintiff organizations for more than two years.
Although defendant alleges an "elaborate cover-up" that prevented
it from becoming "fully aware of the extent, mechanics, and
purpose of the payment scheme until at least June 30, 2006,"
Def.'s Mot. to Amend at 4, such a statement ignores the evidence
in this case that was available to defendant before June 30, 2006
and does not excuse defendant's delay from June 30 forward.
Plaintiffs' counsel admitted in open court on September 16, 2005
that the plaintiff organizations provided grants to Tom Rider to
"speak out about what really happened" when he worked at the
circus. *See* Hearing Tr. (Sept. 16, 2005).  Defendant, however,
waited a year and a half after that hearing to file its
counterclaim.  Even after allegedly becoming aware for the first
time in June 2006 of the amount of payments received by Rider
through WAP, defendant waited an additional eight months to file
its motion to amend and such motion was filed only <u>after</u>
defendant's motion for summary judgment, which it claimed would
end the litigation on the ESA claims in the case.

Aside from the delay, given the inherent complexity of a
RICO claim generally, and the RICO claim proposed in this case in

7

particular, the Court finds that allowing defendant to amend its answers to assert a claim of such breadth would "unleash a Hydra that would require from the court nothing short of a herculean effort in time and attention to even maintain a semblance of control over it." *Koch v. Koch Industries, Inc.*, 127 F.R.D. 206, 212 (D. Kan. 1989). Through its numerous discovery-related motions, defendant has shown that its efforts to obtain information to impugn plaintiff Tom Rider and learn every detail of the media and litigation strategies of its opponents are relentless. The Court will not allow a proposed counterclaim to be used as a tool to indefinitely prolong this litigation on a very narrow issue – whether or not defendant's treatment of its elephants constitutes a taking under the ESA. For this and all of the above stated reasons, the Court **denies** defendant's motion to amend its answers to assert a RICO counterclaim.

C. **Unclean Hands Defense**

Defendant also now seeks to amend its answer to assert the doctrine of unclean hands as a defense. Defendant alleges that an amendment asserting this defense would conform the pleadings to the evidence in the case. For the same reasons of undue delay and dilatory motive that the Court denies defendant's motion for leave to amend to assert a RICO counterclaim, the Court denies defendant's motion to amend to assert the unclean hands defense. Defendant was aware of the payments to Tom Rider that underlie

its defense of unclean hands at least as early as 2005.

Defendant decided to delay asserting this defense until three and

a half years into the litigation, at least three years of

discovery, and a year and a half after learning of plaintiffs'

alleged payments to Tom Rider, and only after discovery appeared

as though it was winding down and defendant had filed what it

considered a dispositive motion.  Such delay provides strong

evidence of a dilatory motive aimed at prolonging the ultimate

disposition of the one issue in this case – whether or not

defendant's treatment of its elephants constitutes a "taking"

under the ESA.

Moreover, the unclean hands defense is not a proper defense

in a citizen suit seeking an injunction to prevent a "take" under

Section 9 of the ESA.  The Court finds the reasoning for barring

the unclean hands defense in other cases involving statutes with

citizen suit provisions allowing private citizens to bring suits

that are in the public interest to be equally applicable to this

case.  *See Chrysler Corp. v. General Motors Corp.*, 596 F. Supp.

416, 418-20 (D.D.C. 1984) (barring unclean hands defense raised

in answer to suit under Clayton Act and Sherman Antitrust Act);

*United States v. Am. Elec. Power Serv. Corp.*, 218 F. Supp. 2d

931, 938 (S.D. Ohio 2002) (concluding that the "defense of

unclean hands is inappropriate as applied to public citizens who

are authorized to bring suit under the [Clean Air Act] by
Congress").

The Supreme Court's reasons for not allowing an unclean
hands or *in pari delicto* defense where private parties were
seeking treble damages under the Clayton Act and the Sherman
Antitrust Act, *see Kiefer-Stewart Co. v. Joseph E. Seagram &
Sons, Inc.*, 340 U.S. 211 (1951); *Perma Life Mufflers, Inc. v.
Int'l Parts Corp.*, 392 U.S. 134 (1968), has been applied by
courts disallowing such a defense in antitrust actions seeking
injunctive relief, *see*, *e.g.*, *Chrysler Corp.*, 596 F. Supp. at
419-20 (citing cases), and applies with equal force to citizen
suits seeking injunctive relief under the ESA.  Under both the
ESA and the antitrust laws, private citizens function as "private
attorneys general" representing the public interest.  *See id*. at
419 ("Private parties filing suit under the antitrust laws
function as 'private attorneys general' representing the public
interest."); *Bennett v. Spear*, 520 U.S. 154, 165 (1997)
(indicating that the "obvious purpose" of the ESA citizen suit
provision "is to encourage enforcement by so-called 'private
attorneys general'").  In explaining why unclean hands and *in
pari delicto* defenses were barred in antitrust actions brought by
private citizens, the Supreme Court reasoned:

> The purposes of the antitrust laws are best served by
> insuring that the private action will be an
> ever-present threat to deter anyone contemplating
> business behavior in violation of the antitrust laws.

> The plaintiff who reaps the reward of treble damages
> may be no less morally reprehensible than the
> defendant, but the law encourages his suit to further
> the overriding public policy in favor of competition.
> A more fastidious regard for the relative moral worth
> of the parties could only result in seriously
> undermining the usefulness of the private action as a
> bulwark of antitrust enforcement.

*Perma Life Mufflers, Inc.*, 392 U.S. at 139.  Likewise, the

purposes of the Endangered Species Act – to protect endangered

and threatened species – are best served by insuring that a

private right of action by citizens promoting the public interest

in the preservation of such species will remain an ever-present

threat to those seeking to unlawfully harm such species.  The

Court refuses to weigh the "relative moral worth" of Tom Rider

and the plaintiff organizations versus FEI because the law

encourages citizen suits under the ESA to further the overriding

public policy in favor of protecting the animals from unlawful

harassment or harm that constitutes an impermissible "take" under

Section 9 of the ESA.  Allowing the unclean hands defense to be

asserted in this context would seriously undermine the usefulness

of the citizen suit provision.  For all of the above reasons, the

Court **denies** defendant's motion to amend it answers to assert an

unclean hands defense.

    **D.  Motion to Strike WAP's Response**

    FEI has also filed a Motion for Expedited Ruling to Strike

Non-Party WAP's Response to FEI's Motion for Leave to Amend Due

to Untimeliness and Lack of Standing.  Because WAP is not a party

to this case nor has it sought leave to intervene and the Court therefore did not consider its response, the Court **grants** FEI's motion to strike WAP's response to the motion.

## III. CONCLUSION

For the foregoing reasons, the Court **denies** defendant's Motion for Leave to Amend Answers to Assert Additional Defense and Counterclaim and **grants** defendant's Motion for Expedited Ruling to Strike Non-Party WAP's Response to FEI's Motion for Leave to Amend Due to Untimeliness and Lack of Standing.

Signed:    **Emmet G. Sullivan**
                **United States District Judge**
                **August 23, 2007**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FELD ENTERTAINMENT, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civ. No. 07-1532 (EGS) |
| AMERICAN SOCIETY FOR THE PREVENTION OF | ) | |
| CRUELTY TO ANIMALS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER**

Upon consideration of defendants' motion to stay, the opposition and replies thereto, and the entire record herein, it is hereby ORDERED that the motion is GRANTED; and it is further

ORDERED that this action is stayed pending this Court's final judgment in ASPCA v. Ringling Brothers and Barnum & Bailey Circus, No. 03-2006 (EGS)(D.D.C.); and it is further

ORDERED that the parties shall make recommendations for further proceedings in this action within thirty days after the Court issues that final judgment.

_____
U.S. District Court Judge