UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FELD ENTERTAINMENT, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civ. No. 07-1532 (EGS) |
| AMERICAN SOCIETY FOR THE PREVENTION OF | ) | |
| CRUELTY TO ANIMALS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO
TEMPORARILY STAY ALL PROCEEDINGS**

**INTRODUCTION**

Feld Entertainment Inc. ("FEI") acknowledges that "[t]rial courts have broad discretion to enter a stay of an action before it when there are pending 'independent proceedings which bear upon the case.'" FEI Opposition to Defendant's Motion to Stay (Oct. 9, 2007) ("FEI Opp.") at 3, quoting Hisler v. Gallaudet Univ., 344 F. Supp. 2d 29, 35 (D.D.C. 2004). In light of the findings this Court has already made concerning FEI's nearly identical proposed "RICO Counterclaim" against the American Society for the Prevention of Cruelty to Animals and the other plaintiffs (the "ASPCA Plaintiffs") in ASPCA v. Ringling Bros. ("the ESA Action"), No. 03-2006 (EGS), and the Wildlife Advocacy Project ("WAP"), the Court should exercise this "broad discretion" to hold proceedings in this lawsuit in abeyance pending a final judgment in the ESA Action. Indeed, for the reasons discussed below, FEI's Opposition only serves to underscore why this would further the Court's own interests in judicial economy and efficiency, while causing no actual prejudice to FEI – which, once again, only claims as its "damages" attorneys' fees in the

pending ESA case.  <u>See</u> Defendants' Motion to Temporarily Stay All Proceedings ("Stay Mot.") at 4.[1]

Before turning to FEI's specific arguments, however, it is important to set the record straight concerning several themes that run throughout FEI's brief.  Most important, FEI repeatedly (but erroneously) asserts, with regard to FEI's effort to file its RICO case as a Counterclaim, that the ASPCA Plaintiffs argued – and the Court agreed – that the RICO claim should not proceed because it is totally "unrelated" to the ESA case.  FEI Opp. at 18.[2]

But, as suggested by the fact that these assertions are unaccompanied by citations to the <u>actual filings</u> in the ESA case, that is <u>not</u> what the ASPCA Plaintiffs argued, or the Court held. Indeed, the RICO claim is obviously "related" to the ESA case in the sense that it is <u>based expressly on the ASPCA Plaintiffs purported misconduct in prosecuting that case</u> – <u>i.e.</u>, FEI's allegations that the ASPCA Plaintiffs are bribing a witness <u>in the ESA case</u>, FEI Opp. at 26; have "perpetrated a fraud on this Court" <u>in the ESA case</u>, <u>id.</u>; and committed "perjury" and "spoliation" of documents <u>in the ESA case</u>.  <u>Id.</u> at 21-24.  Where, as here, a RICO claim relies on such alleged actions in connection with another pending lawsuit, it would have been nonsensical

---

[1] Although the ASPCA Plaintiffs and WAP believe there are compelling grounds for a Stay at this time, if, for whatever reason, the Court is not prepared to stay this suit pending resolution of the ESA Action, they request that the Court at least extend the deadline to file a responsive pleading (presently due November 5, 2007) until thirty days after the close of discovery in the ESA Action (<u>i.e.</u>, until January 31, 2008).  As explained in the Stay Motion, the ASPCA Plaintiffs and their counsel are making strenuous efforts to complete all of the discovery necessary in the ESA Action, and cannot, at the same time, devote the time that would be necessary to effectively defend themselves in this lawsuit.  <u>See</u> Stay Mot. at 15-16.

[2] <u>See</u> <u>also</u> <u>id.</u> at 27 ("just weeks ago they convinced the Court to disallow the "RICO" counterclaim because the two matters are entirely different"); <u>id.</u> at 14 n.6 ("In opposition to FEI's efforts to add its RICO claim as a counterclaim in the ESA Action, defendants strenuously argued that the two were <u>in no way related</u>") (emphasis added).

for the ASPCA Plaintiffs to argue, or for the Court to hold, that the matters are "in no way related." FEI Opp. at 14 n.6.[3]

Instead, what the ASPCA Plaintiffs <u>actually</u> argued – and this Court sustained – is that it was highly <u>prejudicial</u> to the ASPCA Plaintiffs for the RICO Counterclaim to be raised so late in the ESA Action, and that the Counterclaim was filed for the improper purpose of interfering with and delaying resolution of the ESA Action. <u>See</u> ESA Action, ASPCA Plaintiffs' Opp. to Mot. to Amend ("Amend Opp.") (DE 132), at 1-3. Indeed, the ASPCA Plaintiffs' principal proposal in response to the Counterclaim (precisely as here) was that the "Court should <u>hold in abeyance the motion to add the RICO counterclaim until plaintiffs' ESA claims have been heard by the Court</u>," <u>id</u>. at 1 (emphasis added), including because the "Court will obviously be in a much better posture to address" the issues bearing on the RICO claim "<u>after</u> it considers plaintiffs' case on the merits." <u>Id</u>. at 33 (emphasis in original). In short, the ASPCA Plaintiffs have <u>maintained</u>, not "revers[ed]," their position on this matter. FEI Opp. at 3.[4]

More important, this Court's ruling on the RICO Counterclaim was <u>not</u> predicated on a counterintuitive finding that the RICO claim is unrelated to the ESA lawsuit. To the contrary,

---

[3] Indeed, in light of the repeated allegations in the current RICO Complaint based <u>entirely</u> on matters at issue in the ESA case – including, for example, that Tom Rider "has no actual injury in fact" and that the ASPCA Plaintiffs "do not have standing to bring the ESA Action," RICO Compl. at ¶ 60 – it was a clear circumvention of both the letter and spirit of this Court's related case rules for FEI to have failed to designate this case as "related" to the ESA case.

[4] The same cannot be said for FEI. In moving to add its counterclaim, FEI advised the Court that the RICO "counterclaim is <u>closely related</u> to the ESA action." ESA Action, Defendant's [FEI] Mot. for Leave to Amend Answers to Assert Additional Defense and RICO Counterclaim ("FEI Counterclaim Mot.")(DE 121) at 11 (emphasis added); <u>id</u>. at 9 ("the conduct underlying FEI's counterclaim is <u>part and parcel of the ESA Action</u>") (emphasis added). Yet FEI then filed the same "closely related" claim as an unrelated case. <u>See</u> Complaint, Att. 1.

the Court specifically recognized that the "alleged elaborate scheme . . . involves <u>paying Tom</u> <u>Rider for his participation as a key fact witness in this lawsuit</u>," as well as "<u>false discovery</u> <u>responses and cover-ups amounting to an obstruction of justice . . . .</u>"  ESA Action, Mem. Op. of Aug. 23, 2007 (DE 176) ("Mem. Op.")(Def. Exh. 1), at 4 (emphasis added).  Consequently, once again, the Court's ruling was based on its "find[ing]" that FEI's attempt to raise a "RICO counterclaim <u>is made with a dilatory motive, would result in undue delay, and would prejudice</u> <u>the opposing party</u>," including by imposing "burdensome and lengthy" discovery on the ASPCA Plaintiffs (and their counsel) at the same time that they are attempting to "bring[] their 'taking' claim to trial."  <u>Id</u>. at 4, 6 (emphasis added).  These "findings" – which FEI largely ignores – also counsel overwhelmingly in favor of staying the same RICO claim when packaged as an "unrelated" lawsuit.[5]

        In addition to misstating the ASPCA Plaintiffs' prior position and this Court's ruling, FEI also inaccurately caricatures the ASPCA Plaintiffs' and WAP's arguments in the instant motion.  Contrary to FEI's assertions (which are unaccompanied by citations), neither the ASPCA Plaintiffs nor WAP have ever "ask[ed] the Court to permit them to avoid the Federal Rules with which all litigants" must comply, FEI Opp. at 3, or "implor[ed] the Court to use its discretion to cover their tracks."  <u>Id</u>. at 2.  Nor have they argued that "they have a First Amendment right to commit illegal activity under the guise of their political agenda," <u>id</u>. at 5, or that this action should be stayed "merely because they are non-profit organizations."  <u>Id</u>.

_____

        [5] FEI states that the ASPCA Plaintiffs and WAP's  "<u>insinuation</u> that the RICO Action is some kind of delay tactic is false."  FEI Opp. at 3 (emphasis added).  But this is not merely the organizations' "insinuation" – it was one of this Court's express <u>reasons</u> for not allowing FEI to pursue the RICO counterclaim.  <u>See</u> Mem. Op. at 4 (finding that FEI's motion "<u>is made with a</u> <u>dilatory purpose</u>") (emphasis added).

Instead, based largely on rulings this Court has already issued, the ASPCA Plaintiffs and WAP contend that (1) allowing this case to proceed now will severely prejudice their prosecution of the ESA Action in precisely the manner envisioned by the Court; (2) staying this case until this Court resolves the ESA Action will invariably further the Court's own interests in judicial economy and efficiency; and (3) FEI will suffer no concrete prejudice whatsoever if its long-delayed RICO action is deferred until the ESA Action is resolved.  See Mem. Op. at 7 ("defendant has been aware that plaintiff Tom Rider has been receiving payments from the plaintiff organizations for more than two years").  Putting aside its invective and rhetoric, FEI has not effectively rebutted any of these grounds for a temporary stay of this lawsuit.[6]

## **ARGUMENT**

### A.    **Allowing The RICO Action To Proceed At This Time Will Prejudice The ASPCA Plaintiffs' Ability To Litigate The ESA Action**.

FEI does not deny that the substantial prejudice to the ASPCA Plaintiffs' ability to pursue their ESA claim to resolution (and, by inference, prejudice to the Court's own interest in having that long pending controversy resolved) was the principal reason that the Court denied FEI's motion to add the RICO Counterclaim less than two months ago.  See Mem. Op. at 4-7.  Yet

---

[6]  In the ESA action, the Court has decried the "hostile attitude [of these parties] toward each other."  ESA Action, Aug. 23, 2007 Order (DE 178), at 12.  Accordingly, the ASPCA Plaintiffs and WAP will refrain from responding in detail to FEI's allegations – which they repeatedly assert as fact – that the groups (and their counsel) "repeatedly lied under oath about the payments to Rider," FEI Opp. at 21, "destroyed numerous" documents, id., "concealed this conduct for years," id., "perpetrated a fraud on this Court," id. at 26, "hir[ed] a plaintiff to procure standing," id. at 16, and committed many other "nefarious deeds."  Id. at 25.  Suffice it to say that the organizations believe these charges are completely baseless (as they have previously explained at length in various filings in the ESA case, see, e.g., Amend Opp.), and have been leveled by FEI in another in a long line of efforts to impede efficient resolution of the ESA case.  See, e.g., Mem. Op. at 5 ("As a result of [FEI's] failure to timely produce thousands of pages of veterinary records, the Court allowed discovery to continue in this case.").

while this identical consideration – along with the Court's specific finding of a "dilatory motive"
in raising the RICO claim, id. at 4 – would appear to compel the conclusion that FEI's
repackaged RICO action also should not be permitted to "sidetrack" the ESA case, id. at 6, FEI
insists that "exactly the opposite" is true because:

> [t]he Court's prior ruling addressed whether the RICO claim should delay litigation of the
> ESA Action while the present inquiry is whether litigation of the ESA Action should
> delay litigation of the RICO Action.  Since there will be no RICO counterclaim in the
> ESA Action, it is clear the [sic] proceeding with the RICO claims in a totally separate
> lawsuit can have no delaying or any other effect on the ESA action.  Such a delay was the
> primary basis that defendants would have suffered [sic] if the 'taking' and RICO claims
> were adjudicated in one lawsuit.

FEI Opp. at 16 (emphasis in original).

But this is simply rhetoric rather than a meaningful response.  The "present inquiry," id.,
is whether the Court should exercise its concededly "broad discretion to enter a stay" under the
unusual circumstances confronting the Court.  Id. at 3.  The Court may (and should) do so for the
very reasons it previously delineated – reasons that do not evaporate because the very same RICO
claim has been refiled with a different docket number.  Despite FEI's effort to define the problem
away, the severe prejudice to the ASPCA Plaintiffs already discerned by the Court can and
should also inform the Court's "discretion to grant a stay of proceedings in its own court."  Sierra
Club v. City of Honolulu, 2007 WL 2694489, *3 (D. Hawaii Sept.11, 2007), citing Lockyer v.
Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005).[7]

---

[7]  Granting a stay until the ESA case is resolved would in no way conflict with the
Supreme Court cases cited by FEI.  In Clinton v. Jones, 520 U.S. 681 (1997) – in which the
principal issue was whether the President was entitled to defer all civil litigation while in office –
the Court stated simply that the "proponent of a stay bears the burden of establishing its need,"
id. at 708, and that a stay should be based on "particular factual findings that might have
buttressed an exercise of discretion . . . ."  Id. at 707 n. 41.  Here, especially in light of the
Court's prior findings concerning the effect of the RICO claim on the ESA action, the requisite

Indeed, FEI's opposition brief only serves to reinforce the concerns already recognized by the Court. Thus, in an effort to have its RICO Counterclaim accepted FEI previously advised the Court that it intended to take a "pointed and efficient" approach to discovery regarding the RICO claim, and that "much of the RICO evidence has already been uncovered or is now pending before the Court." ESA Action, FEI's Reply in Support of Mot. for Leave to Amend (DE 142), at 9. Yet, FEI <u>now</u> asserts that its pursuit of the RICO claim will "<u>involve substantial discovery that will not take place</u> when the 'very limited discovery' that remains to be completed in the ESA Action is taken." FEI Opp. at 13-14 (emphasis added). In addition, FEI now acknowledges that it intends to take discovery directly from the ASPCA Plaintiffs' counsel at the same time that

---

burden is easily satisfied. Similarly, in <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 255 (1936), the Court <u>upheld</u> the authority of lower courts to stay litigation in appropriate circumstances – even where (unlike here) the stayed litigation involves entirely different parties from those in the pending proceedings. <u>Id</u>. at 254. The Court further stressed the "<u>power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.</u>" <u>Id</u>. at 255 (emphasis added). FEI quotes one phrase from <u>Landis</u> – "the supplicant for a stay must make out a clear case of hardship or inequity," FEI Opp. at 15 – but omits the qualifier: "<u>if</u> there is even a fair possibility that the stay for which he prays will work damage to some one else." 299 U.S. at 255 (emphasis added). There is no such "possibility" here because FEI's only damages (their attorneys' fees in the ESA action) will not even be <u>ascertainable</u> until the ESA claim is resolved. In any event, the Court has, in effect, already held that there will be a "clear case of hardship" if the RICO claim proceeds at the same time that the ESA case is nearing completion.

Likewise, none of the lower court rulings cited by FEI remotely counsels against a stay here. For example, in <u>Sierra Club v. City of Honolulu</u>, on which FEI heavily relies, FEI Opp. at 18-19, the defendant sought an indefinite stay of a lawsuit brought by an environmental group seeking an <u>injunction</u> against sewage spills alleged to violate the Clean Water Act. 2007 WL 2694489 *1. The court reasoned that if the stay were granted, the "[p]laintiffs will be denied the possibility of prompt injunctive relief to stop the water pollution" and the plaintiffs have "established at least a <u>fair possibility of irreparable harm to the environment</u>." <u>Id</u>. (emphasis added). If anything, this reasoning <u>supports</u> the stay request here, where the ASPCA Plaintiffs contend that FEI is taking federally protected endangered elephants in ongoing violation of the ESA, and where, as the Court has already found, FEI is using the RICO claim as a "tool to indefinitely prolong" and otherwise "sidetrack" the ESA litigation. Mem. Op. at 6, 8.

they are attempting to complete discovery and prepare for trial in the ESA case. <u>Id</u>. at 19

(asserting that "Meyer, Glitzenstein & Crystal [] attorneys have been involved in the RICO

activity, and <u>likely will be witnesses in the RICO Action</u>") (emphasis added).[8]

Plainly, therefore, the Court's predictions of the adverse effect of the RICO claim on the

ESA Action are now being borne out by FEI's own concessions, <u>i.e.</u>, at the same time that

discovery has been greatly narrowed by the Court in the ESA action, FEI intends to use the RICO

claim to pursue its "relentless" efforts to "learn every detail of the media and litigation strategies

of its opponents," and to "'unleash a Hydra that would require from the court nothing short of a

herculean effort in time and attention to even maintain a semblance of control over it.'" Mem.

Op. at 8 (<u>quoting</u> <u>Koch v. Koch Indus., Inc.</u>, 127 F.R.D. 206, 212 (D. Kan. 1989)). This will, as

the Court envisioned, inevitably "sidetrack" and delay the ESA litigation as both the ASPCA

Plaintiffs and their counsel expend their time and resources furnishing "at a minimum, numerous

_____

[8] FEI asserts that "[d]efendants' argument that the RICO action will distract their counsel during the ESA Action [] is not a basis to warrant a stay" because "defendants have voluntarily chosen to retain the same law firm to represent them in the RICO Action." FEI at 19. In fact, WAP is being represented here by separate, below-signed counsel, who are prepared to represent all of the defendants should that become necessary. In any event, contrary to FEI's suggestion, there is certainly no "conflict" or any other ethical concern with the "same law firm" in the ESA Action representing the ASPCA Plaintiffs at <u>this</u> pretrial stage of the RICO case. <u>Id</u>. Indeed, because this motion to stay is advancing essentially the same position that the organizations proffered in response to the last RICO claim, and because the firm representing the ASPCA Plaintiffs is intimately familiar with the facts underlying the stay request, it would clearly impair those organizations' interests if the firm were <u>not</u> involved at this juncture.

Moreover, even if the ASPCA Plaintiffs had retained entirely separate counsel from the outset of the new RICO case, the critical fact remains that FEI has now declared its intention, should the RICO case proceed, to take extensive discovery from the attorneys who represent the ASPCA Plaintiffs, as well as from the ASPCA Plaintiffs and WAP themselves. This will severely hamper pursuit of the ESA Action regardless of the counsel who represent the ASCPA Plaintiffs in the new RICO action.

additional documents and depositions – beyond the evidence already produced on payments to

Tom Rider," and responding to "numerous discovery-related motions" dwarfing even those that

FEI has filed in the ESA case.  Mem. Op. at 6, 8.[9]

In short, nothing in FEI's opposition memorandum calls into question the Court's

findings that, if the RICO claim proceeds at this time, the ASPCA Plaintiffs will be "required to

devote substantial resources to defending against a RICO claim rather than bringing their 'taking'

claim to trial," and that the "additional discovery" sought by FEI in the RICO action will prove

"unduly burdensome to [the ESA] plaintiffs" and the Court, as the ESA action is now "winding

down."  Mem. Op. at 5-6.  Consequently, the ASPCA Plaintiffs have easily demonstrated the

"prejudice," as well as the "clear case of hardship or inequity," that FEI itself acknowledges may

support a stay while other judicial proceedings unfold.  FEI Opp. at 15.

## B.     A Stay Will Further The Interests Of Judicial Economy And Efficiency.

As previously explained, a stay that lasts only until discovery is completed in the ESA

Action and that case is tried and decided – which, in view of the present discovery cutoff date,

could occur within the next six months – will serve the Court's own interests in "control[l]ing the

---

[9]  If and when the RICO case proceeds, the ASPCA Plaintiffs and WAP also anticipate pursuing their own discovery to defend against the "far-reaching nature of defendant's RICO claim."  Mem. Op. at 5.  For example, to reinforce that the organizations have reasonably expended funds on Tom Rider's highly successful media campaign, they will seek discovery from FEI regarding its public relations efforts and expenses in connection with the treatment of elephants in the circus.  Plaintiffs will also seek additional documents and other forms of discovery bearing on FEI's systemic efforts to punish and intimidate its critics, and specifically all such efforts to "impugn" Tom Rider because of his public criticisms of the circus's treatment of the elephants.  Mem. Op. at 8; see, e.g., Amend Opp. at 8-11,  Exh.1 (describing FEI's admitted use of a former Deputy Director of the CIA to conduct "intelligence gathering operations" aimed at animal protection advocates and other critics of FEI, as well as FEI's internal "Plan" to "discredit animal activist entities," including by filing lawsuits against them so that they will "spend more of their resources in defending their actions").

disposition of the causes on its docket with economy of time and effort . . . ." <u>Landis</u>, 299 U.S. at

254.  FEI has not only failed to rebut those common-sense arguments, but its brief actually

underscores why the limited stay sought here is eminently sensible from the Court's own

perspective.

First, once again, FEI has now acknowledged that it intends to take extensive discovery

from the ASPCA Plaintiffs - and their attorneys - that goes well beyond what the Court has

deemed permissible in the ESA action.  The prospect of such discovery – as well as the plethora

of other motions that will undoubtedly be filed in connection with FEI's "relentless" pursuit of

the RICO claim, Mem. Op. at 8 – may, at the very least, create enormous scheduling difficulties

for the Court as it attempts to set dates for pretrial and trial proceedings in the ESA case.

Second, if the RICO case is permitted to proceed while the ESA case is being prepared

for trial, the extensive discovery that FEI now concedes it intends to take in the RICO case will

invariably create difficult questions as to whether FEI is actually attempting to circumvent the

Court's restrictions on discovery in the ESA Action.  For example, the Court has specifically

held that FEI should not, as part of the ESA case, be permitted to take discovery concerning the

ASPCA Plaintiffs' "media or legislative strategies" regarding FEI's treatment of the elephants.

ESA Action, Aug. 23, 2007 Order (DE 178).  Yet, as reinforced by its opposition to the Stay

Motion here, FEI will seek to obtain "every detail" of such "strategies."  <u>See</u> Mem. Op. at 8.

Accordingly, if such discovery is ongoing at the same time the ESA Action is pending, this will

necessarily raise difficult – and otherwise easily avoidable – issues as to whether FEI is

impermissibly seeking to obtain information for use in the ESA Action.

Third, contrary to FEI's unsubstantiated assertion that "[n]othing that happens in the future of the ESA Action has anything to do with FEI's ability to bring or succeed on the merits of the RICO Action," FEI Opp. at 5, it is apparent that the ESA case may play out in ways that have an enormous bearing on the "far-reaching" RICO claim.  Mem. Op. at 6.  Most obviously, as the Court has already recognized, part of the RICO case is expressly based on FEI's prediction that Tom Rider will prove to be a "key fact witness in [the ESA] lawsuit," Mem. Op. at 4 (emphasis added) – and hence that his purportedly "bribed" testimony will harm FEI in a manner that is actionable under RICO.  See, e.g., RICO Compl. at ¶ 8 (asserting that the ASPCA Plaintiffs and their attorneys "have been providing funding to Rider for his participation . . . as a key fact witness in the ESA Action") (emphasis added); id. at ¶¶ 31, 60.[10]

Plainly, however, if Mr. Rider proves not to be a "key fact witness" at the trial, then at least this aspect of the RICO Complaint will be rendered moot.  In other words, if, in fact, Mr. Rider's eyewitness testimony proves to be a minor part of the success or failure of the ESA Action – e.g., because all of the other evidence introduced at the trial, including FEI's own documents and videotapes, and the testimony of multiple other eyewitnesses, amply supports the ASPCA Plaintiffs' claims of beating, chaining, and other forms of "taking" of the elephants – then FEI cannot conceivably prevail on their contention (which they must make in a RICO case)

---

[10]  FEI now asserts that "Rider's testimony in the ESA Action . . . is entirely irrelevant to the legal and factual issues" in the RICO case.  FEI Opp. at 14.  But as set forth above and as the Court has already recognized, that is not what the RICO Complaint itself alleges.  It is also not how FEI previously – and more accurately – characterized the same RICO Counterclaim.  See, e.g., FEI Counterclaim Mot. at 2 (asserting that the ASPCA Plaintiffs are "not 'funding' Rider to 'educate the public about Ringling Bros.'" but, rather, "are paying Rider for his participation . . . as a key fact witness in the ESA Action") (emphasis added).

that Rider's service as a fact witness is the "but for" cause of any alleged RICO injuries.  See Stay Mot. at 18-20.

Moreover, contrary to FEI's counterintuitive contention, should Mr. Rider not in fact prove to be a "key" fact witness in the ESA case, the Court will not be obligated to let the RICO case nevertheless proceed on the basis of an empirically false premise.  See FEI Opp. at 12-14. While it is true that a Rule 12(b)(6) motion to dismiss for failure to state a claim is ordinarily evaluated based on the allegations in the Complaint, it has long been the law in this Circuit that "[w]hen a court rules on a 12(b)(1) motion, it may 'undertake an independent investigation to assure itself of its own subject matter jurisdiction.'" Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1107 (D.C. Cir. 2005), quoting Haase v. Sessions, 835 F.2d 902, 908 (D.C. Cir. 1987)). This "independent investigation" specifically "includes considering facts developed in the record beyond the complaint." Settles, 429 F.3d at 1107 (emphasis added).

Accordingly, if, following resolution of the ESA Action, the ASPCA Plaintiffs and WAP move to dismiss some or all of the RICO Complaint on jurisdictional grounds stemming from the ESA Action, the Court most assuredly could take pertinent developments in the ESA Action into consideration in deciding whether the Court should (or could) allow the RICO case to go forward.  See, e.g., Evans v. City of Chicago, 434 F.3d 916, 924 (7th Cir. 2006) ("whether an alleged RICO injury was caused 'by reason of' a violation of the statute – has also been considered a component of standing"), citing Beck v. Prupis, 529 U.S. 494 (2000). For example, if FEI's allegations that Mr. Rider will be a "key" fact witness were to become moot in view of the actual proceedings in the ESA trial, and/or FEI could not establish injury in fact or causation (as necessary for Article III standing) because resolution of the ESA Action did

not in fact turn on Mr. Rider's eye-witness testimony, the Court could indeed take cognizance of those real-world developments in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(1). Settles, 429 F.3d at 1107; see also Judicial Watch v. U.S. Senate, 432 F.3d 359, 361 (D.C. Cir. 2005) (relying on statistics concerning resolution of federal appeals in affirming dismissal of complaint on standing grounds).[11]

Fourth, FEI's claim that it is suffering injury within the meaning of the RICO statute because the ASPCA Plaintiffs and WAP have purportedly bribed Mr. Rider to be a plaintiff in the ESA Action is also dependent on factual and legal allegations that may prove false upon completion of the ESA trial.  In particular, as we have explained, the Court may ultimately find that one or more of the other plaintiffs also has standing and, in that event, FEI could not plausibly maintain that the alleged bribery scheme is the "but for" cause of its injuries (as it must for both standing and RICO purposes).  See Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991, 1996-98 (2006).  Indeed, FEI recognizes this reality because one of the express allegations in the

---

[11]  While the Court's ability to consider such developments is unassailable in the context of jurisdictional issues, contrary to FEI's position, the Court could also consider them in resolving a 12(b)(6) motion for failure to state a claim.  As the Supreme Court recently reaffirmed, in ruling on such motions, courts are authorized to consider "matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 & Supp. 2007)); see also Covad Comms. Co. v. Bell Atl. Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005) ("we took 'judicial notice of facts on the public record' . . . as a court may do upon a motion to dismiss").  Hence, if Mr. Rider proves not to be a "key" witness in the ESA case tried before the Court, the Court could take judicial notice of that fact in ruling on a 12(b)(6) motion.  See also Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1228 (D.C. Cir. 1993) (court may look to record of another proceeding "to avoid unnecessary proceedings when an undisputed fact on the public record makes it clear that the plaintiff does not state a claim upon which relief could be granted"); see also Fed. R. Evid. 201(a) (a fact is judicially noticeable if it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

RICO Complaint is that "[a]lone ASPCA, AWI, FFA, and API <u>do not have standing to bring the ESA Action</u>." RICO Compl. at ¶ 16 (emphasis added).

However, notwithstanding FEI's protestations to the contrary, this Court has <u>not</u> made (and could not have made) any <u>definitive</u> finding as to the standing of the organizational plaintiffs. Accordingly, FEI's declaration that "there is no doubt that Rider is the 'but for' cause of the ESA Action because without him there would be no ESA Action," FEI Opp. at 8, is, at the very least, premature because this Court may well ultimately conclude that one or more of the other plaintiffs <u>do</u> have standing.

Thus, while it is true that, at a <u>preliminary</u> stage, the Court dismissed the ESA Action on standing grounds, the Court of Appeals "reversed" that order of dismissal – holding that "Rider's allegations are sufficient to withstand a motion to dismiss for lack of standing," and expressly "<u>not decid[ing] whether</u> the other plaintiffs have standing because each of them is seeking relief identical to what Rider seeks." <u>Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus</u>, 317 F.3d 334, 338-39 (D.C. Cir. 2003) (emphasis added). Hence, the D.C. Circuit's order of reversal expressly left open the possibility that one or more of the organizational plaintiffs may have standing in its own right. <u>Id</u>.[12]

Nor, contrary to FEI's contention, does this Court's earlier order of dismissal foreclose any such argument. <u>See</u> FEI Opp. at 7-8. To begin with, that Order did not even discuss the standing of one of the present ASPCA Plaintiffs – the Animal Protection Institute ("API") –

---

[12]    Indeed, FEI obviously understood that the standing of the organizational plaintiffs was still very much at issue in this case, since, <u>after</u> the D.C. Circuit's remand, FEI took extensive discovery from the organizations <u>regarding their standing allegations</u>.

which filed a Supplemental Complaint on October 27, 2005.  See ESA Action, Supplemental

Complaint (DE 180).

     API  has made detailed standing allegations – including that defendants' "'taking' of the

elephants without permission from the Fish and Wildlife Service pursuant to the process created

by section 10 of the [ESA] violates API's and its members' statutory rights to obtain information

generated by the section 10 process," id. at ¶ 6, and that "API must spend financial and other

resources pursing alternative sources of information about defendants' actions and treatment of

elephants."  Id.  Such allegations are functionally identical to those that have been deemed

sufficient for organizational standing in other recent cases.[13]  In any event, because API's

standing has never been adjudicated by this Court, the Court certainly cannot presume – in

deciding how best to manage the RICO case – that API's standing will necessarily be found

wanting in the ESA case.

     With regard to the other ASPCA Plaintiffs whose standing was addressed in the Court's

earlier ruling, FEI simply misapprehends the "law of the case" doctrine when it asserts that those

organizations' standing is "not subject to further consideration by the Court."  FEI Opp. at 8.  As

the D.C. Circuit has explained the general doctrine:

---

    [13]  See Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, 469
F.3d 129, 132-33 (D.C. Cir. 2006) (finding that an organization's allegations that the defendants'
conduct had "caused a drain on [the organization's] resources and time because the organization
has had to divert significant time and resources" from other activities was sufficient for standing
under Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-79 (1982)); id. at 133 ("This court
has applied Havens Realty to justify organizational standing in a wide range of circumstances.");
see also Cary v. Hall, No. C 05-4363 VRW, Slip Op. at 16-25 (N.D. Ca. Sept. 30, 2006) (finding
that conservation organizations had standing based on allegation that they were being deprived of
information they were entitled to under section 10 of the ESA), citing Gerber v. Norton, 294 F.3d
173 (D.C. Cir. 2002) (ESA Action, Pl. Opp. to Mot. for Sum. Jud. (DE 96), Ex. G.

a 'legal decision made at one stage of litigation, <u>unchallenged in a subsequent appeal when the opportunity to do so existed</u>, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.'

<u>Kimberlin v. Quinlan</u>, 199 F.3d 496, 500 (D.C. Cir. 1999) (emphasis added), <u>quoting</u>

<u>Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.</u>, 810 F.2d 243, 250 (D.C. Cir. 1987).

In this case, the ASPCA Plaintiffs <u>did</u> appeal this Court's standing ruling regarding the organizations, and the D.C. Circuit simply found it unnecessary to address their standing in light of its holding on Mr. Rider's standing. Under these circumstances, the law of the case doctrine does <u>not</u> foreclose the Organizations from demonstrating their standing issue at later stages of the litigation. <u>Kimberlin</u>, 199 F.3d at 500-01. To the contrary, it is well-established that this Court has "discretion . . . to reconsider its [own] decisions <u>prior to final judgment</u>." <u>Spirit of the Sage Council v. Kempthorne</u>, __ F. Supp. 2d __, 2007 WL 2446209 *4 (D.D.C. Aug. 30, 2007) (emphasis added). Indeed, Fed. R. Civ. P. 54(b) expressly provides that any order short of a final judgment "is <u>subject to revision at any time before the entry of judgment adjudicating all the claims</u> and the rights and liabilities of all the parties" (emphasis added), and hence the Court may revise its earlier standing ruling – or any other preliminary order – "as justice requires." <u>Cobell v. Norton</u>, 224 F.R.D. 266, 272 (D.D.C. 2004)(internal quotations omitted).[14]

---

[14]  FEI's reliance on this Court's ruling in <u>Spirit of the Sage Council</u> (at 8) is misplaced because in that case the Court <u>did</u> engage in an extensive reassessment of its earlier rulings on ripeness and standing (after an appeal on one phase of the case had become moot), specifically to evaluate whether any intervening precedents would support a different result. <u>See</u> <u>Spirit of the Sage Council</u>, 2007 WL 2446209, **4-7. Accordingly, it is difficult to understand how FEI can cite that case for the clearly erroneous legal proposition that standing of the organizations "<u>is not subject to further consideration by the Court</u>." FEI Opp. at 8 (emphasis added); <u>compare</u> <u>Spirit of the Sage Council</u>, 2007 WL 2446209, *4 ("With regard to this Court's own prior decisions in this case, the law of the case doctrine leaves discretion for the Court to reconsider its decisions [on standing and ripeness] prior to final judgment").

Further, even if the law of the case doctrine <u>did</u> apply under these circumstances, that would still not prevent the Court from considering whether there was "good reason" – and particularly precedents <u>since</u> the Court's standing decision six years ago – that would warrant a different analysis.  <u>Spirit of the Sage Council</u>, 2007 WL 2446209 *4.  Here, as noted, there <u>are</u> recent precedents supporting the ASPCA Plaintiffs' standing based on their assertions of informational injury.  <u>See</u> <u>supra</u> at n.13.  In any event, because the Court could, in the ESA case, ultimately conclude that one or more of the Organizations <u>do</u> have standing (and hence could have pursued this case irrespective of Tom Rider), this is yet another way in which resolution of the ESA case may indeed "clarify, narrow or moot [] legal or factual issues" in the RICO case. FEI Opp. at 6.[15]

Lastly, FEI does not dispute the proposition that courts should avoid resolution of constitutional issues when possible.  <u>See</u> Stay Mot. at 17-18.  Instead, FEI reinforces this rationale for a stay by advancing the facially bankrupt argument that the RICO Complaint – which seeks damages from the ASPCA Plaintiffs and WAP specifically <u>because</u> (in addition to bringing the ESA Action) they have exercised their rights to petition federal and state legislative

---

[15]  FEI's argument that even if the Court were to "now find that the organizations have standing independent of Rider" that would have no bearing on the RICO case, FEI Opp. at 8, makes no sense.  In that event, once again, the Court would in effect be ruling that the existence of the case was <u>not</u> dependent on Mr. Rider's participation, and hence his purportedly "bribed" involvement could not, by definition, be the "but for" cause of FEI's asserted damages.  Also groundless is FEI's assertion that the organizations have "essentially admitted" that they are moving to add several individual plaintiffs because they lack "standing in their own right."  <u>Id</u>. at 9.  In reality, as the briefing on that motion makes clear, the ASPCA Plaintiffs are seeking to add these <u>recent</u> employees of Ringling Brothers' "Red Unit" because they can assert specific injuries with regard to FEI's treatment of a number of elephants, including "pre-Act" elephants to which the Court has now limited Plaintiffs' claims as a result of its recent summary judgment ruling. <u>See</u> ESA Action, Mot. to Suppl. Complaint (DE 181).

bodies to regulate the treatment of circus animals, see RICO Compl. at ¶¶ 162-168 – does not even implicate the Noerr-Pennington doctrine or other First Amendment concerns.  FEI Opp. at 25-26.  FEI also undercuts its own contention that "resolution of the ESA Action will have no bearing upon defendants' Noerr-Pennington defense to the RICO action, id. at 26, by asserting that the ESA Action "falls within the 'sham' exception to Noerr-Pennington."  Id. at 26 n.11.  At the risk of pointing out the obvious, an actual resolution of the ESA case will put the Court in a far better position to evaluate whether that case amounts to nothing more than a "sham."

### C.    FEI Will Suffer No Prejudice If The RICO Claim Is Stayed Pending A Trial In The ESA Case.

While both the Court and ASPCA Plaintiffs have compelling interests in temporarily staying the RICO Action, FEI has demonstrated no concrete prejudice if this course is followed by the Court.  Most important, FEI does not (and cannot) dispute that its asserted RICO claim (and the relief it seeks thereunder) cannot even be fully ripe until the ESA Action is completed.  Indeed, FEI appears to concede that, under RICO, FEI can only obtain damages as a remedy, and that those purported damages, once again, are the attorneys' fees in the ongoing ESA Action.  Accordingly, because FEI's asserted damages could not even be calculated until after the ESA litigation concludes, it makes no sense to put the litigation cart before the horse in the manner advocated by FEI.[16]

Instead of pointing to any actual prejudice it will suffer from a temporary stay – especially in light of FEI's own extensive delay in raising the RICO claim, see Mem. Op. at 7 – FEI reiterates the unproven (and baseless) allegations that form the crux of the claim itself, i.e., that

---

[16]  FEI does not dispute that injunctive relief is not available for its RICO Claim.  See Stay Mot. at 23 n.7.

the ASPCA Plaintiffs are not really funding Tom Rider's public education campaign but, instead, are bribing him to be a plaintiff and/or witness and committing other associated "nefarious" acts. FEI Opp. at 25.  As usual, FEI conveniently ignores the overwhelming empirical evidence that Mr. Rider has in fact conducted the extensive public education campaign that FEI insists is fictitious and, indeed, has done so extremely successfully by generating media coverage on behalf of the elephants in newspapers and on television and radio stations throughout the country. See, e.g., Amend  Opp. at 26-30, Exhs. 15, 44-48; see also ESA Action, WAP's Opp. to Def. Mot. to Compel (DE 93), at 10, Exhs. B, C.[17]

In any event, while FEI has availed itself of the opportunity to again castigate the ASPCA Plaintiffs and their counsel in the ESA Action, see FEI Opp. at 21-22, none of this has anything to do with whether the Court should temporarily stay the RICO action.  Rather, the only intimation of actual prejudice from a stay is FEI's assertion that the ASPCA Plaintiffs have an "admitted track record related to spoliation" of documents and the "Court should not give them any more time in which they have the opportunity to continue destroying evidence."  Id. at 24.

---

[17]  Since FEI's first attempt to pursue its RICO claim, Mr. Rider has continued successfully to generate media coverage of FEI's ongoing mistreatment of the elephants.  See, e.g., Fairfield Weekly, "County Fair: Elephanticide?" (Oct. 11, 2007) (available at http://www.fairfieldweekly.com/article.cfm?aid=3522) (last visited Oct. 23, 2007); KTNV ABC, "Ringling Brothers To Stand Trial For Animal Abuse" (Aug. 24, 2007) (available at http://www.ktnv.com /Global/story.asp?s=6980811)(last visited Oct. 23, 2007); KFDA Newschannel 10, "Alleged Elephant Abuse at the Circus" (May 8, 2007)(available at http://www.newschannel10.com/Global/story.asp?s=6489286).  Indeed, Mr. Rider's effectiveness as a public spokesperson on behalf of the elephants is, as demonstrated by FEI's own internal documents, the real reason why FEI has conducted such a "relentless" effort to "impugn" him and all those who support him.  Mem. Op. at 8; see Amend Opp. at 28, Exh. 48 (describing FEI e-mail expressing concern over Mr. Rider's appearance at UCLA Law School because "Mr. Rider's presentation could easily be considered VERY damaging to our industry") (emphasis added; caps in original).

Characteristically, however, FEI cites nothing that actually supports this "admitted track record" of rampant document destruction, and FEI's description (not quotation) of materials filed in the ESA case is misleading at best.

Most egregiously, while Mr. Rider has indeed lived a hard life in a used van while he follows the circus around the country, he has never used "[l]iving in a van" as an "excuse to get rid of relevant evidence or for his counsel to continue to permit him to do it unabated." FEI Opp. at 24. Nor has he ever "admitted under oath that he may not be keeping all documents related" to FEI's alleged "scheme because he 'lives in a van.'" Id.

To the contrary, what Mr. Rider has said "under oath" in response to the Court's discovery order is that he believes that he has "produced all responsive records that came into [his] possession since March 30, 2004" – when FEI first served him with discovery requests regarding his expenses and sources of income – and that he is "absolutely confident that [he] did not intentionally destroy, discard, or otherwise dispose of any such documents." Declaration of Tom Rider (FEI Exh. 15) at ¶ 5. Mr. Rider has further sworn that, although he lives "out of a used van" and "do[es] not have a home or office," he has "tried [his] best to keep track of all documents [he has] received that in any way relate to this case, and to produce all responsive documents to defendant." Id.[18]

_____

[18] Pursuant to the Court's discovery Order, Mr. Rider also attempted to describe any documents that he ever had and that FEI subsequently requested in discovery. Id. ¶ 3. Moreover, it is FEI that the Court has previously held failed to "timely produce thousands of pages of veterinary records" in the ESA Action – and, for many years, refused to acknowledge that they existed. Mem. Op. at 5. On this record, therefore, if any party has a legitimate concern with document retention, it is the ASPCA Plaintiffs.

In short, FEI's charge of ongoing document destruction in the ESA case is simply unfounded.  In any event, all of the ASPCA Plaintiffs and WAP can assure the Court that they will not destroy any documents related to FEI, its elephants, or the "scheme" alleged in the RICO Complaint.  Indeed, although it should not be necessary, the ASPCA Plaintiffs and WAP would have no objection if the Court were to include in an order staying this case an admonition that <u>all</u> of the parties should preserve any potentially relevant documents.

In sum, the Court has already found that FEI delayed for <u>years</u> in pursuing any RICO claim after it first learned of Mr. Rider's funding, Mem. Op. at 7, and, especially in that context, FEI's claim of prejudice if the claim is stayed while the ESA claim proceeds to trial rings hollow. In any event, as reinforced by FEI's own brief, the factors supporting such a stay far outweigh any <u>actual</u> prejudice FEI might suffer from a finite delay.[19]

---

[19]  While it has no discernible bearing on the Motion to Stay, FEI devotes several pages of its brief painting a distorted picture of the ASPCA Plaintiffs' provision of information in the ESA Action concerning Mr. Rider's funding.  <u>See</u> FEI Mot. at 21-23.  In a recent filing in that case, the ASPCA Plaintiffs have explained their efforts to comply scrupulously with the Court's discovery Order concerning such funding, and hence they respectfully refer the Court to that filing should the Court deem it in any way relevant to the Stay request.  <u>See</u> ESA Action, Pl. Resp. to Def. "Notice," at 2-5 (DE 201).

**CONCLUSION**

For the foregoing reasons, as well as those previously set forth, defendants respectfully

request that the Court stay all proceedings in this case until the Court resolves the ESA Action.

Respectfully submitted,

/s/   Howard M. Crystal
Howard M. Crystal (D.C. Bar No. 446189)

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W.,  Suite 700
Washington, D.C.  20009
(202)  588-5206

Counsel for the ASPCA Plaintiffs

/s/   Stephen L. Braga
Stephen L. Braga (D.C. Bar No. 366727)
Emma Kuntz (D.C. Bar. No. 501210)

Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 639-7704

October 23, 2007                    Counsel for the Wildlife Advocacy Project

22