**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
FELD ENTERTAINMENT, INC.       )
                               )
         Plaintiff,            )
                               )
      v.                       )    Civ. Action No. 07-1532 (EGS)
                               )
AMERICAN SOCIETY FOR THE       )
PREVENTION OF CRUELTY          )
TO ANIMALS, et al.,            )
                               )
         Defendants.           )
_____)
```

**MEMORANDUM OPINION**

Pending before the Court is Defendant American Society for the Prevention of Cruelty to Animals, *et al.*'s ("ASPCA") Motion to Temporarily Stay All Proceedings.  Upon consideration of the motion, response and reply thereto, applicable law, and the entire record, the Court **grants** defendants' motion.

**I.    BACKGROUND**

Feld Entertainment, Inc. ("FEI") has filed suit against ASPCA, the Fund for Animals, the Animal Welfare Institute, the Animal Protection Institute, Tom Rider, and the Wildlife Advocacy Project alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and the Virginia Conspiracy Act, Va. Code Ann. § 18.2-499-500.  With the exception of the Wildlife Advocacy Project ("WAP"), each of the defendants is a plaintiff in the related case, *APSCA v.*

*Ringling Bros.*, No. 03-2006, in which ASPCA alleges FEI's treatment of its Asian elephants violates the Endangered Species Act ("ESA"). FEI's allegations in this case stem directly from ASPCA's conduct in prosecuting the ESA Action.

The gravamen of plaintiff's complaint is that defendant Tom Rider has been bribed by the organizational defendants to participate in the ESA Action against FEI in violation of federal law. FEI alleges that ASPCA and the other defendants have acted as an association in fact, perpetrating a scheme to "permanently ban Asian elephants in circuses and to defraud FEI of money and property, with the ultimate object of banning Asian elephants in all forms of entertainment and captivity." Compl. ¶ 7. Plaintiff further alleges that to carry out this scheme, defendants "conspired to conduct and conducted the Enterprise through a pattern of ... bribery and illegal gratuity payments ... obstruction of justice, mail fraud, and wire fraud." *Id.*

FEI previously sought to amend its answers to add this RICO claim as a counterclaim in the ESA Action. The Court denied that request in its August 23, 2007 Memorandum Opinion. FEI then filed this lawsuit. Defendants ask the Court to "temporarily stay all proceedings in the Second RICO Suit pending a final judgment in the ESA Action." Def.'s Mot. at 2.

2

## II.  ANALYSIS

### A.  Standard of Review

"A court has inherent power to stay proceedings in control of its docket, after balancing the competing interests." *Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971).  "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *see also Hisler v. Gallaudet University*, 344 F.Supp.2d 29, 35 (D.D.C. 2004)("The trial court has broad discretion to stay all proceedings in an action pending resolution of independent proceedings elsewhere."). However, the "suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." 299 U.S. at 255.  In determining whether to grant a stay, "the court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side." *Gordon v. Fed. Deposit Ins. Corp.*, 427 F.2d 578, 580 (D.C. Cir. 1980).  "This is best done by the exercise of judgment, which must weigh competing interests and maintain an even balance."  *GFL Advantage Fund, Ltd. V. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003).

**B.   Defendants' Motion**

The ASPCA defendants and WAP ask the Court to temporarily stay plaintiff's RICO suit until the ESA action is decided.  In support of their request, defendants contend that allowing FEI's RICO case to go forward at the same time the ESA action enters the pretrial stage will "severely prejudice their prosecution of the ESA Action in precisely the manner envisioned by the Court" in its August 23, 2007 Memorandum Opinion.  Def.'s Reply at 5.  There, the Court found that the RICO counterclaim would result in significant additional expenses to plaintiffs, would likely create a need for new counsel to pursue the ESA claim where no need currently exists, and that the claim was being used as a tool by FEI to indefinitely prolong the ESA litigation.  Def.'s Mot. at 2 (internal citations omitted).  Defendants argue that the same reasons that justified denial of FEI's Motion to Amend also support its motion to stay.  Defendants contend that simply refiling the RICO claim as a new lawsuit (as opposed to a counterclaim) does nothing to lessen the hardship imposed on ASPCA already found to exist by this Court.  The Court agrees.

In its opposition, FEI has seriously misconstrued the Court's August 23, 2007 Memorandum Opinion denying FEI's Motion to Amend.  FEI contends throughout its brief that the Court rejected its RICO counterclaim because it was entirely "unrelated" to the underlying ESA suit.  *See e.g.,* Def.'s Opp'n at

4

2, 6, 13-15, 27.  This assertion is patently incorrect.  The
Court rejected FEI's RICO counterclaim because it found the claim
was made with a dilatory motive, would cause undue delay, and
would prejudice the plaintiffs in the ESA Action.  Mem. Op. at 4,
No. 03-2006, (Aug. 23, 2007).  Nowhere in its opinion did the
Court determine the claims are too different to be tried in the
same lawsuit or that the outcome of the ESA action is irrelevant
to the RICO claim.  Rather, the Court found that it was highly
prejudicial to the ASPCA plaintiffs for the RICO counterclaim to
be raised so late in the ESA litigation, *id.* at 5, and that the
counterclaim was filed for the improper purpose of interfering
with and delaying resolution of the ESA action. *Id.* at 8 ("The
Court will not allow a proposed counterclaim to be used as a tool
to indefinitely prolong this litigation on a very narrow issue –
whether or not [FEI's] treatment of its elephants constitutes a
taking under the ESA.").

ASPCA further contends that "FEI will suffer no prejudice
whatsoever if its long-delayed RICO action is deferred until the
ESA Action is resolved." *Id.*  FEI counters that it has delayed
the filing of this action only because defendants have
successfully concealed their misconduct and any further delay of
this action will "result in significant prejudice to FEI." Def.'s
Opp'n at 21.  The Court is not persuaded that FEI will suffer any
prejudice as a result of a temporary stay.

While it is the proponent's burden to make out a case of hardship sufficient to justify imposition of a stay, *Landis*, 299 U.S. at 255, the Court must weigh the competing interests of all involved and maintain an even balance. *Id.* The Court previously found that defending against this claim while simultaneously prosecuting its ESA action would unduly prejudice ASPCA. Mem. Op. at 4. Conversely, FEI has not articulated any actual prejudice that would be imposed by a temporary stay. In fact, the section of its brief apparently dedicated to arguing prejudice does nothing more than recite further allegations of wrongdoing on the part of the defendants. *Id.* at 21-25. Rather than identifying actual harm potentially caused by the stay, FEI contends only that a stay would "delay FEI's day in court." *Id.* at 21. In the same section, FEI then accuses defendants of destroying evidence and suggests that this alleged conduct also constitutes prejudice caused by the proposed stay. *Id.* at 24. The Court will deal with each of these arguments in turn.

First, FEI itself has already long delayed its day in court on this claim. FEI alleges in its complaint that it first learned of payments to Tom Rider in June of 2004, Compl. ¶ 20, although in other filings, FEI alleges it did not discover the "scheme" until June of 2006. FEI's Mot. to Amend. at 4. In either event, FEI has waited a significant amount of time before bringing this claim. This Court has already held that the delay

was improperly motivated and intended to prolong the ESA action. Mem. Op. at 5. Therefore, the Court is not convinced that a further temporary delay of FEI's RICO claim works any significant prejudice to FEI's right to access the Court.

Second, FEI accuses defendants of "spoliation of evidence" and argues that the Court should "not give them any more time in which ... to continue destroying evidence." *Id.* at 24. FEI alleges that defendants have an "admitted" track record of document destruction and that Mr. Rider "may not be keeping all documents related to the payment scheme." Def.'s Opp'n at 24. In its August 23, 2007 Order on Discovery Motions, defendants were directed to produce or account for all documents relating to the payment of Tom Rider. *ASPCA v. Ringling Bros.*, No. 03-2006, Order at 6-7. Plaintiff contends that the declarations submitted by Mr. Rider and ASPCA in response to that order evidence ongoing "nefarious" document destruction from which it requires immediate relief. Again, FEI grossly distorts the facts. While both declarations identify documents that may have been inadvertently discarded before FEI's first discovery request, Ex. 15, Rider decl., ¶¶ 3,5; Ex. 16, ASPCA Decl. ¶ 2(c), neither amount to an admission of willful document destruction or evidence of a cover-up scheme. In fact, the declarations comply precisely with this Court's order requiring defendants to provide a sworn statement accounting for all responsive documents that may have been

destroyed.  *See* Order at 3.  In these declarations, defendants
have simply accounted for documents they are unable to produce.
Consequently, FEI has not shown that a stay will result in the
intentional destruction of evidence such that it would be
prejudiced.

Finally, FEI seeks as damages in the RICO action the
attorneys fees incurred in defending the ESA Action.  Given that
the ESA Action is still ongoing, and because FEI has no choice
but to continue to defend the ESA suit regardless of the outcome
of its RICO claim, FEI's damages are unascertainable at this
point.

The public also has an interest in the expeditious
litigation of the ESA claim that counsels in favor of the stay.
"Especially in cases of extraordinary public moment, the
individual may be required to submit to delay not immoderate in
extent and not oppressive in its consequences, if the public
welfare or convenience will thereby be promoted." *Dellinger v.
Mitchell*, 442 F.2d 782, 786(D.C. Cir. 1971).  In the ESA Action,
ASPCA has put forth serious allegations of mistreatment of an
endangered species, allegations which, if true, have tremendous
public import.  The citizen suit provision of the ESA encourages
private parties such as defendants in this case to act as
"private attorneys general," *Bennett v. Spear*, 520 U.S. 154, 165
(1997), to enforce the Act's provisions for the benefit of the

public interest as a whole.  *Id.* (Finding that all persons have
an interest in the environment).  The Court has already found
that simultaneous prosecution of plaintiff's RICO claim would
unduly delay resolution of the ESA claim.  The public interest in
the ESA claim weighs in favor of granting the temporary stay.

Finally, the Court's interest in judicial economy and
efficiency is served by the imposition of a temporary stay at
this time.  The Court has inherent power to control the
disposition of the causes on its docket with economy of time and
effort for itself, for counsel, and for litigants. *Landis*, 299
U.S. at 254.  Progress in the underlying ESA Action has been
painfully drawn out due to the conduct of *all* parties to this
litigation.  The parties have demonstrated their inability or
unwillingness to cooperate on even the most insignificant issues.
The Court is not optimistic that allowing a second lawsuit to go
forward between the same parties would result in anything less
cumbersome, protracted, or vitriolic than the first.  The
administrative burden of managing two such suits concurrently
would not be an efficient allocation of the Court's limited
resources.

The district court has broad discretion in granting or
denying stays so as to coordinate the business of the Court
efficiently and sensibly, but such discretion may be abused by a
stay of indefinite duration in absence of a pressing need.

*McSurely v. McClellan*, 426 F.2d 664, 671 (D.C. Cir. 1970). While defendants have shown the requisite hardship to justify a temporary stay at this time, the stay of plaintiff's RICO action shall be in effect only until a determination is made by this Court on the merits of the ESA claim. Unless other compelling circumstances arise, the stay will be lifted at that time regardless of further litigation regarding attorneys fees or the pendency of any appeals.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' Motion for a Temporary Stay of all Proceedings. An appropriate order accompanies this Memorandum Opinion.


**Signed:     Emmet G. Sullivan**
**            United States District Judge**
**            November 7, 2007**