**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **FELD ENTERTAINMENT, INC., Plaintiff,** | ) | |
| **v.** | ) | **Civ. No. 07-1532 (EGS)** |
| **AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, *et al.*, Defendants.** | ) | |

**DEFENDANT THE HUMANE SOCIETY OF THE UNITED STATES'S SUPPLEMENTAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 1
A. The ESA Litigation .......... 1
B. There is no cognizable legal entity called FFA/HSUS .......... 2
C. FFA's Payments .......... 4
1. FFA payments to Rider and MGC before the corporate combination .......... 4
2. FFA payments to WAP after the corporate combination .......... 4
III. ARGUMENT .......... 5
A. FEI's RICO Claims Against HSUS Must Be Dismissed Because the Factual Allegations Against FFA, A Separate and Distinct Organization from HSUS, Cannot Be Imputed to HSUS .......... 6
1. HSUS did not conduct or participate in the conduct of the alleged enterprise's affairs .......... 6
2. The Amended Complaint fails to adequately plead at least two predicate acts of racketeering against HSUS. .......... 9
B. The Amended Complaint Fails to Adequately Allege HSUS was part of a RICO Conspiracy. .......... 10
IV. CONCLUSION .......... 10

## I. INTRODUCTION

The Amended Complaint's RICO and accompanying state law claims against Defendant The Humane Society of the United States ("HSUS") must be dismissed for the simple and unremarkable reason that HSUS and the Fund for Animals ("FFA") are two distinct organizations and, as a matter of law, the alleged actions of FFA cannot be imputed to HSUS. HSUS was never a plaintiff in the ESA Action. Nor did HSUS make a single payment to Tom Rider. Therefore, for the reasons set forth below, the Amended Complaint's factual allegations, which are based exclusively on actions allegedly taken by plaintiffs in the ESA Action, do not and cannot support a claim against HSUS.[1]

## II. FACTUAL BACKGROUND

### A. The ESA Litigation

HSUS was never a plaintiff in the ESA Action, despite FEI's erroneous allegations to the contrary. (*See* Am. Compl. ¶¶ 50, 55.)[2] The original complaint in the ESA Action, Civil Action No. 00-1641, was filed in the United States District Court for the District of Columbia on July 11, 2000. The plaintiffs in the original action were Performing Animal Welfare Society, American Society for the Prevention of Cruelty to Animals ("ASPCA"), Animal Welfare

---

[1] The Amended Complaint must be dismissed for the reasons stated in Defendants' Omnibus motion to dismiss. Given HSUS's unique position in this suit, however, HSUS is entitled to dismissal for the additional reasons addressed in this supplemental brief.

[2] "Exhibit[s] . . . may be considered in deciding the motion to dismiss because 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case . . . may be considered by the district court without converting the motion into one for summary judgment.'" *Baird v. Snowbarger*, ___ F. Supp. 2d ___, Civil Action No. 09-1091, 2010 WL 3999000, at *13 n.2 (D.D.C. Oct. 13, 2010) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 376 (3d ed. 2004)); s*ee Western Associates Limited Partnership v. Market Square Associates*, 235 F.3d 629, 634 (D.C. Cir. 2001) (relying on facts outside the four corners of amended complaint to dismiss RICO claim; "it is appropriate for the court to look beyond the amended complaint to the record").

Institute ("AWI"), FFA, Patricia Derby, Edward Stewart, Thomas Rider, and Glenn Ewell. HSUS was not a party to Civil Action No. 00-1641.

Another complaint was filed in the ESA Action in the United States District Court for the District of Columbia on September 26, 2003, which was numbered Civil Action No. 03-2006. (Am. Compl. ¶ 55.) Plaintiffs in the subsequent ESA Action were ASPCA, AWI, FFA, Rider, and Animal Protection Institute ("API"). HSUS was not a plaintiff in Civil Action No. 03-2006.

**B. There is no cognizable legal entity called FFA/HSUS**

On January 1, 2005, HSUS and FFA agreed to join forces in a corporate combination to advance their common mission. Although this corporate combination has been referred to colloquially as a "merger," it was not. (*See, e.g.*, Am. Compl. ¶¶ 36, 160.) The two groups have continued to operate as separate and distinct organizations.

In particular, on November 22, 2004, HSUS and FFA executed an Asset Acquisition Agreement ("the Agreement"). (*See* Ex. A.) The Agreement was designed to create an affiliation between the two organizations but <u>did not effect a merger</u>. Although HSUS purchased, acquired, and accepted assets from FFA, the Agreement nonetheless excluded specific assets and operational programs that remained with FFA, including (1) cash in the amount of $250,000.00, (2) books and records relating to incorporation and minutes of proceedings of its members and directors, (3) records relating to preparation and certification of financial statements, (4) the right to receive mail and other communications addressed to FFA, (5) undeveloped real property in Colebrook, Connecticut, and (6) FFA's real property and facilities at Murchison, Texas (the Black Beauty Ranch), and at Ramona, California (the Wildlife Rehabilitation Center). (*See* Ex. A at § 1.2; *see also* Ex. B, Michael Markarian Trial Tr. at 25:12-26:13 (March 10, 2009).)

On June 22, 2005, Michael Markarian, in his role as President of FFA, testified as a **Rule 30(b)(6) witness on behalf of FFA** regarding this distinction:

> Q: The Fund for Animals and the Humane Society of the United States merged at the beginning of [2005], is that right?
>
> A: It was not a formal merger, it was a corporate combination of the two organizations.
>
> Q: What do you mean by "a corporate combination"?
>
> A: The organizations remain . . . distinct entities, but our management structures are coordinated and we take advantage of some efficiencies of administration, including accounting and . . . payroll. But the two organizations . . . are still . . . both in existence.

(Ex. C, Michael Markarian Rule 30(b)(6) Dep. Tr. at 25:9-21.)

FFA and HSUS continued to maintain not only separate <u>corporate</u> identities but also separate <u>operational</u> identities. FFA continued to conduct its own programs as a separate entity, distinct from HSUS, including running animal care centers. (*Id*. at 29:13-17). The Black Beauty Ranch in east Texas, for example, is a 1,300 acre animal sanctuary that is home to numerous animals that have been rescued from abusive situations or have been abandoned. (Ex. B, Markarian Trial Tr. at 71:4-8.) FFA also maintained its own fundraising identity and its own income stream, filing its own Form 990 annually with the Internal Revenue Service. (*See* Ex. D, excerpts of FFA's Form 990 for 2005, 2006 and 2007.)

Moreover, FFA continued to proceed with its own litigation, such as the ESA Action. (Ex. C, 29:13-17.) FFA did not need to receive approval from HSUS to remain involved in the ESA Action. (*Id*. at 32:6-9.) Nor was the HSUS bound in any way to provide support for the litigation previously undertaken by FFA. (*Id*. at 32:10-14.) As a result of the corporate combination, FFA did discontinue its direct payroll. Instead, time spent by HSUS employees working on FFA programs is billed back to FFA by HSUS. (*Id*. at 60:24-61:10.) Finally, FFA

and HSUS continued to maintain separate boards of directors after the corporate combination. (*Id*. at 27:16-18.) In response to a **non-party** subpoena in the ESA Action, HSUS produced documents to FEI demonstrating that FFA conducts separate meetings, separate legal proceedings, and still exists as a corporate entity distinct from HSUS with distinct operational programs. HSUS also produced FFA's corporate registration statements and certificate of good standing from the State of New York.

**C. FFA's Payments**

The Amended Complaint also alleges erroneously that "FFA/HSUS" made payments to Rider. (*See* Am. Compl. ¶¶ 156-168.) HSUS, as an independent organization, never made a single payment, either directly or indirectly, to Rider.

**1. FFA payments to Rider and MGC before the corporate combination.**

Before the corporate combination in January 2005, FFA made a $1,000.00 payment to Rider in 2004 directly. (*Compare* Am. Compl. ¶156 *with* Ex. E, M. Markarian's March 6, 2008 Evidentiary Hearing Testimony Tr. at 65:25-66:2.) HSUS did not make this payment. Likewise, before the corporate combination, FFA paid Meyer, Glitzenstein and Crystal ("MGC") approximately $4,500 that was given to Mr. Rider between 2001 and 2003. (*Compare* Am. Compl. ¶ 158 *with* Ex. E at 66:3-6 *&* Ex. B at 44:10-20.) Again, HSUS did not make any of these payments.

**2. FFA payments to WAP after the corporate combination.**

After the corporate combination, FFA also made six payments to the Wildlife Advocacy Project ("WAP"). These payments were made from FFA monies. These were not HSUS payments. HSUS's accounting department merely *processed* FFA's payments because FFA relies on the administrative functions of HSUS "for processing the Fund For Animals' checks." (*See* Ex. E at 66:20-69:13; *see also* Ex. B at 47:21-48:15.)

On March 6, 2008, Markarian testified before U.S. Magistrate Judge John Facciola at an evidentiary hearing regarding FFA's payments to (1) Rider, (2) Meyer, Glitzenstein and Crystal, and (3) WAP, making clear that none of FFA's payments in question were HSUS payments:

> Q: So the **Fund for Animals has paid Tom Rider** a thousand dollars. The **Fund for Animals has paid Meyer, Glitzenstein and Crystal** almost $4,500, and the Humane Society has paid the Wildlife Advocacy Project $11,500; is that correct?
>
> A: **The Humane Society has not paid the Wildlife Advocacy Project that money. That was the Fund for Animals' payment** to the Wildlife Advocacy Project which was processed by the accounting department of the Humane Society.
>
> Q: Why wasn't that processed by the Fund for Animals?
>
> A: The Fund for Animals relies on the administrative functions of the Humane Society of the United States when processing checks, making payments, etcetera.

(Ex. E at 66:20-67:6 (emphasis added); *see also id*. at 67:7-69:9.)

## III. ARGUMENT

A complaint must be dismissed when, as here, the plaintiff failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must set forth a "'claim for relief that is *plausible on its face*.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must be dismissed under Rule 12(b)(6) if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557)). The Court must reject unsupported legal conclusions

and unwarranted factual inferences. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Here, FEI's claims against HSUS, an organization independent and distinguishable from FFA, rely on such unwarranted factual inferences and erroneous legal conclusions and therefore must be dismissed as a matter of law.

### A. FEI's RICO Claims Against HSUS Must Be Dismissed Because the Factual Allegations Against FFA, A Separate and Distinct Organization from HSUS, Cannot Be Imputed to HSUS.

To survive a motion to dismiss a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must set forth adequate factual allegations establishing that *each* defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 496 (1985); *Western Associates Limited Partnership v. Market Square Associates*, 235 F.3d 629, 633 (D.C. Cir. 2001). Here, FEI has failed to do so with respect to HSUS, a separate and distinct defendant. FEI cannot satisfy the necessary RICO elements against HSUS because the Amended Complaint fails to allege how HSUS was involved in – much less operated or managed – the affairs of the alleged enterprise.

#### 1. HSUS did not conduct or participate in the conduct of the alleged enterprise's affairs.

To be liable under Section 1962(c), a defendant must "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The Supreme Court has held in no uncertain terms that "one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993) (noting "it is clear that Congress did not intend to extend RICO liability under § 1962(c) beyond those who participated in the operation or management of an enterprise"). The "conduct or participate" element requires a

defendant to "have some part in directing those affairs." *Id.* at 179. Thus, to establish liability, FEI is required to show that HSUS had "some part in directing the enterprise's affairs." *Id.*; *see also Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co*., 996 F.2d 1534, 1539-40 (3d Cir. 1993); *Harpole Architects, P.C. v. Barlow*, 668 F. Supp. 2d 68, 75-76 (D.D.C. 2009) (dismissing RICO claim under Section 1962(c); "it cannot be said that [defendant] participated in 'operating' or 'managing' the enterprise, because plaintiffs have not provided 'further factual enhancement' to support their 'naked allegation,' that she played a part in 'directing [its] affairs") (citations omitted); *Danielsen v. Burnside-Ott Aviation Training Center, Inc*., 941 F.2d 1220, 1231 (D.C. Cir. 1991) (dismissing RICO claim because "[a]ppellants never alleged that appellees, either through a pattern of racketeering activity or otherwise, participated in the operation or management of the [enterprise's affairs], nor is it likely that they could make such an allegation in good faith").

Here, the Amended Complaint fails to demonstrate how HSUS, as an organization distinct from FFA, participated *at all* in the alleged enterprise – let alone how HSUS *directed* or *managed* the alleged enterprise. The thrust of FEI's suit is that defendants "paid Rider to say that he was in fact 'aesthetically injured'" despite the fact that Rider had no such injury. (*See, e.g.,* Am. Compl. ¶ 4.) The record developed in the ESA Action makes clear, however, that HSUS did not pay Rider, either directly or indirectly. (*See supra* at 4-5.)

FEI's RICO claim against HSUS therefore hinges entirely on the legally erroneous assumption that every action taken by FFA can be imputed to HSUS because the two distinct entities "merged" in 2005. That is, FFA and HSUS are referred to jointly throughout the Amended Complaint as "FFA/HSUS." As a matter of black-letter law, however, FFA and HSUS did not "merge" as alleged in the Amended Complaint. "A corporate *merger* consists of a

combination whereby one of the constituent corporations remains in being, absorbing in itself all the other constituent corporations, which cease to exist." *See*, *e.g.*, 20 Am. Jur. Proof of Facts 2d 609.

Here, the two organizations remain distinct corporate entities, both legally and operationally. FFA and HSUS merely entered into a corporate combination that streamlined each entity's administrative functions while maintaining their corporate identities. Under the terms of the Agreement, significant real property in three states, including land, buildings, and other facilities, is retained by FFA, as is FFA's board of directors. Moreover, following the corporate combination, FFA's board remained active and held meetings. HSUS produced minutes of such FFA meetings to FEI as a non-party subpoena respondent in the ESA Action. This Court need not and indeed cannot "accept legal conclusions cast in the form of factual allegations." *Western Associates*, 235 F.3d at 634 (citation omitted). Accordingly, because FEI does not adequately allege that HSUS conducted or participated in the conduct of the alleged enterprise's affairs – let alone directed or managed such affairs – FEI's Section 1962(c) claim against HSUS must be dismissed.[3]

[3] In addition, "[c]ourts have consistently held that an unwitting participant in a RICO enterprise is not within the ambit of the statute." *First City Nat'l Bank & Trust Co. v. FDIC*, 730 F. Supp. 501, 509 (E.D.N.Y. 1990) (dismissing Section 1962(c) claim in part because "[t]he Amended Complaint does not allege that any of the bank directors had actual knowledge of fraud or bribery, much less the specific intent necessary to commit these crimes" and "the Court *cannot impute knowledge* to the defendant directors") (emphasis added) (citation omitted). "Recklessness is not sufficient to prove the required criminal intent." *Id*. at 508-09.

Here, the Amended Complaint does not indicate that HSUS, as a distinct and separate entity from FFA, intended to participate in, or for that matter knew about, any of the allegedly fraudulent conduct. *See Reed Construction Data, Inc. v. McGraw-Hill Companies, Inc.*, ___F. Supp. 2d ___, No. 09-Civ. 8578, 2010 WL 3835196, at *5 (S.D.N.Y. Sept. 14, 2010) (dismissing Section 1962(c) claim in part because "a party cannot be considered a part of a RICO enterprise unless it intended to participate"). In the most favorable light, the Amended Complaint shows

**2. The Amended Complaint fails to adequately plead at least two predicate acts of racketeering against HSUS.**

To be subject to RICO liability, *each* defendant must have knowingly committed at least two predicate acts of racketeering as part of the alleged pattern. *United States v. Philip Morris, USA, Inc.,* 396 F.3d 1190 (D.C. Cir. 2005). FEI's Section 1962(c) claim against HSUS, however, suffers from numerous defects in its predicate act allegations. FEI fails to establish the predicate acts of bribery, illegal witness payments, wire fraud, and/or mail fraud against HSUS. That is, FEI cannot demonstrate that HSUS, as an independent organization, paid Rider, much less that HSUS had the requisite criminal knowledge or intent to make a bribe, make an illegal witness payment or engage in a scheme to defraud anyone or anything through the mail or wire. (*See supra* at 4-5.)

Likewise, the Amended Complaint fails to demonstrate the predicate act of obstruction of justice against HSUS. FEI did not and cannot allege that HSUS, as an independent organization, covered up any payments. (*See* Am. Compl. ¶¶ 192.) HSUS did not reimburse MGC for a single payment to Rider. (*See supra* at 4.) In addition, HSUS was not a plaintiff to the ESA Action, *see supra* at 1-2, and thus could not and did not (1) submit false or misleading discovery responses to FEI or (2) procure Rider's absence from any evidentiary hearings. (*See* Am. Compl. ¶ 231.) Finally, HSUS could not have testified falsely regarding payments to Rider in Markarian's June 22, 2005 deposition, *see* Am. Compl. ¶ 217, because Markarian's June 22, 2005 deposition was as a Rule 30(b)(6) witness for **FFA** only. (*See* Am. Compl. ¶ 217.)

---

that, in processing a series of payments for FFA, HSUS was an unwitting participant in the alleged RICO enterprise. Such allegation is insufficient to satisfy RICO's intent requirement.

Accordingly, because the Amended Complaint fails to adequately allege at least two predicate acts against HSUS, FEI's Section 1962(c) claim against HSUS must be dismissed for this alternative reason.

### B. The Amended Complaint Fails to Adequately Allege HSUS was part of a RICO Conspiracy.

Dismissal of FEI's substantive RICO claims "leaves [FEI's] conspiracy cause of action without a leg to stand on." *Reed Const.*, 2010 WL 3835196, at *6 (citation omitted). Therefore, because FEI's RICO conspiracy claim is derivative of its substantive RICO claim, FEI's Section 1962(d) claim must be dismissed as a matter of law.

Also, RICO conspiracy law requires the same scienter as traditional conspiracy law, *i.e.*, the plaintiff must show more than mere knowledge or mere presence. *Salinas v. United States*, 522 U.S. 52 (1997). FEI has failed to allege adequately any knowledge regarding FFA's requests for disbursement of FFA monies held administratively by HSUS. In the absence of specific allegations of actual knowledge and agreement to conspire in the affairs of the enterprise through a pattern of racketeering activity, FEI's RICO conspiracy count must also be dismissed. *See* 18 U.S.C. § 1962(d).

## IV. CONCLUSION

For the foregoing reasons, this Court should grant Defendant The Humane Society of the United States's supplemental motion to dismiss.[4]

---

[4] Because FEI's RICO claims fail as a matter of law, the Court should not assert supplemental jurisdiction over the state law claims against HSUS. If the Court does so, they should be dismissed on other grounds. (*See* Defs.' Omni Br.) In addition, FEI's abuse of process and malicious prosecution claims against HSUS **must** be dismissed because HSUS was **never** a plaintiff in the ESA Action. *See, e.g., Iram Enterprises v. Veditz,* 126 Cal. App. 3d 603 (1981) ("[I]t is clear that the complaint cannot be amended to state causes of action for malicious prosecution and abuse of process against the individual defendants, who did not commence that action and were not parties thereto").

December 3, 2010

Respectfully submitted,

/s/ W. Brad Nes

BARBARA VAN GELDER
(DC Bar No. 265603)
W. BRAD NES
(DC Bar No. 975502)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 739-5779 (telephone)
(202) 739-3001 (fax)
bnes@morganlewis.com

*Counsel for Defendant*
*The Humane Society of the United States*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was served via electronic filing this 3rd day of December, 2010, to all counsel of record.

/s/ W. Brad Nes
W. Brad Nes