UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FELD ENTERTAINMENT, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 07- 1532 (EGS) |
| | : | |
| AMERICAN SOCIETY FOR THE | : | |
| PREVENTION OF CRUELTY | : | |
| ANIMALS, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S OPPOSITION TO SUPPLEMENTAL MOTION OF DEFENDANTS
LOVVORN AND OCKENE TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Feld Entertainment, Inc. ("FEI")[1] opposes the Supplemental Motion of

Defendants to Dismiss Plaintiff's Amended Complaint (12-03-10) (Docket Entry ("DE") 53)

("Supp. Mot.") of defendants Jonathan Lovvorn ("Lovvorn") and Kimberly Ockene ("Ockene").

FEI incorporates herein all arguments in Plaintiff's Opposition to Motion of Defendants to

Dismiss Plaintiff's First Amended Complaint ("FEI Opp."), filed contemporaneously.

## INTRODUCTION

Lovvorn and Ockene portray themselves as hapless lawyers who merely served as

"employed attorneys working on a litigation matter" for their "superiors and clients," thereby

rendering the claims against them "unconscionable and abusive." Supp. Mot. at 3, 4. However,

they steer clear of denying knowledge of the Rider payment scheme – knowledge they clearly

had. Both lawyers, as officers of the Court, as partners in MGC, and ultimately as employees of

an MGC client – HSUS – participated willingly in the unlawful enterprise. Neither did anything

to stop it. Indeed, to avoid cross-examination at the 2008 contempt hearing in the ESA Case and

to cloak the conspiracy in the attorney-client privilege, Lovvorn represented to the Court that,

after leaving MGC, he continued representing all ESA Case plaintiffs in his in-house HSUS

capacity. No. 03-2006, Tr. of Hearing at 144:25-145:17 (5-30-08). He also demonstrated the

money-laundering by insisting he had "no involvement with payments to Tom Rider," only

"grants" to WAP, *id.* at 146:7-17, when that "grant" money ended up in Rider's pocket, FAC ¶

160. Ockene submitted Rider's false interrogatory answer on his payments. [ESA]DE 476, Att.

14 (DX 16 at 12-13). That their co-conspirators committed more predicate acts does not absolve

Lovvorn and Ockene from *their* wrongdoing, nor are they shielded by their law licenses. "Just

following orders" is no defense. *See* D.C. RULES OF PROFESSIONAL CONDUCT, Rule 5.2 (2007).

---

[1]An explanatory table of acronyms and abbreviations used herein is attached hereto as Appendix A.

*See also Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 884 (D.C. 1998)

(Rule 5.2's "main thrust is to foreclose any 'Nuremberg defense,' *i.e.*, a violation of the Rules is

not excused even if the wrongful conduct was done at the direction of a supervisory lawyer").

The 129-page FAC sufficiently states claims against Lovvorn and Ockene.[2]  The only thing that

would "unconscionable and abusive" here would be letting them escape accountability for what

they did.

## ARGUMENT

### I.   THE FAC STATES A CAUSE OF ACTION UNDER 18 U.S.C. § 1962(C) AS TO LOVVORN AND OCKENE

It is a crime for any person associated with an "enterprise" to "conduct or participate,

directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering

activity."  18 U.S.C. § 1962(c) (2006).  As to them, defendants claim the FAC fails to plead

"racketeering activity (predicate acts);" "conduct or participation;" or "pattern."  Supp. Mot. at 2-

7.  None of these arguments has any merit.

#### A.   The FAC Sufficiently Pleads Lovvorn's And Ockene's Commission of Predicate Offenses And A Pattern Of Racketeering Activity

According to defendants, the FAC does not "identif[y] a single RICO predicate act that

Lovvorn or Ockene committed".  Supp. Mot. at 3.  This is untrue.  The FAC alleges multiple

predicate acts specifically attributed to, or committed by, Lovvorn and Ockene.

Lovvorn and Ockene are responsible for most (if not all) of what MGC and WAP did.  At

various times (yet to be discovered), they both were partners in MGC, a general partnership

under D.C. law.  FAC ¶¶ 39, 44-45.  They are jointly and severally liable for the racketeering

---

[2] Defendants' inaccurate assertion that the FAC "runs over 150 pages," Supp. Mot. at 1, shows their lack of familiarity with the pleading.  Nor have Lovvorn and Ockene been "impermissibly lump[ed] with other defendants." Supp. Mot. at 2.  *See Garrett v. Cassity*, 2010 U.S. Dist. LEXIS 134776 at *57-60 (E.D. Mo. 2010) (denying dismissal; RICO complaint had "allegations directed at defined groups such as the RICO defendants," but also highlighted individual roles).  Lovvorn and Ockene have notice of what they are charged with doing in full compliance with *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). See FEI Opp. at 24-28.

activity of their fellow partners, Meyer and Glitzenstein, as well as the racketeering activity of the firm, all of which occurred in the ordinary course of partnership business. FAC ¶ 46; D.C. CODE § 33-103.01(1) (2010) (each partner is an agent of other partners, whose acts in the ordinary course of business bind the others); § 33-103.05(a) (2010) (partnership liable for third party loss due to partner's wrongful acts); § 33-103.06(a) (2010) (all partners jointly and severally liable for all partnership obligations). *See also BCCI Holdings (Lux.), S.A. v. Clifford*, 964 F. Supp. 468, 486 (D.D.C. 1997) (law firm partners in RICO case jointly and severally liable for wrongs of other partner; no escape from liability by leaving the firm). Since WAP was the alter ego of MGC, FAC ¶ 43, its racketeering activity also is attributable to MGC, and thus, under the foregoing authorities, to the individual partners as well. *See, e.g., Labadie Coal Co. v. Black*, 672 F.2d 92, 97 (D.C. Cir. 1982) (disregarding corporate form turns on "whether the corporation, rather than being a distinct, responsible entity, is in fact the alter ego or business conduit of the person in control").

The FAC specifically details the fraudulent scheme directed at FEI, FAC ¶¶ 98-129, and states how Lovvorn's and Ockene's partners, Meyer and Glitzenstein, as well as MGC and WAP, committed mail or wire fraud to execute that scheme to defraud: FAC ¶¶ 72-77 (MGC); *id.* ¶¶ 98-129 (WAP); *id.* ¶¶ 106, 127-29 (Meyer); *id.* ¶¶ 112-23 (Glitzenstein). The FAC specifically details the bribes and/or illegal gratuities that MGC and WAP paid to Rider: FAC ¶¶ 72-81 (MGC); *id.* ¶¶ 82-126 (WAP). And the FAC specifically details the money laundering activities of both MGC and WAP: FAC ¶ 80 (MGC); *id.* ¶ 130 (WAP). All of these racketeering acts are attributable to Lovvorn and Ockene as partners in MGC. Vicarious liability applies under § 1962(c), *Cox v. Administrator, U.S. Steel*, 17 F.3d 1386, 1406-08 (11th Cir. 1994); *United States v. Philip Morris USA Inc.*, 449 F. Supp. 2d 1, 892-93 (D.D.C. 2006),

including a partner's liability for the actions of other partners, *131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1534 (S.D.N.Y. 1995) ("[i]t is not unreasonable to think that if partners are held civilly liable for the RICO violations of the partnership and co-partners, they will have an added incentive to take steps to reign in misconduct by their colleagues").

In addition to their partners' and law firm's actions, the FAC pleads specific acts by these two defendants:  six separate acts by Ockene and seven by Lovvorn.  Both Lovvorn and Ockene knew that WAP (MGC's alter ego) was paying Rider, FAC ¶¶ 43-45, and, with that knowledge, each participated in procuring Rider's absence from the contempt hearings in 2008, *id.* ¶¶ 231-34.  This is a specific episode of bribery and/or illegal gratuity payments pleaded by the FAC. *Id.  See also* 18 U.S.C. § 201(b)(3)-(4) (2006) (payment or receipt of money "in return for [witness] absenting himself" from any hearing is bribery); § 201(c)(2)-(3) (payment or receipt of money "for or because of such person's [the witness'] absence" from a hearing is illegal gratuity).  There were three such hearings – on February 26, March 3 and May 30, 2008 – constituting three separate procured Rider absences and, thus, three predicate acts of bribery/illegal gratuity payment for each defendant.

Ockene obstructed FEI's inquiry into the Rider payments.  She was involved in the misleading and/or false interrogatory answers served in June 2004 by ASPCA, AWI, FFA and Rider.  FAC ¶¶ 192-205, 223-30; [ESA]DE 476, Att. 14 (DX 16); [ESA]DE 477, Att. 1 (DX 18R), Att. 2 (DX 20R), Att. 3 (DX 19).  Also, with knowledge of the Rider payments, Ockene defended AWI's 30(b)(6) deposition where Cathy Liss gave false deposition testimony about the Rider payments.  FAC ¶¶ 206-216; Liss Dep. at 2 (5-18-05).  These misleading and/or false interrogatory answers and deposition testimony are three separately pleaded acts of obstruction of justice for which Ockene is responsible.  FAC ¶¶ 192-216, 223-30.

Lovvorn participated in the planning and execution of the Rider payments.  FAC ¶ 44.
As an HSUS employee, Lovvorn participated personally in the payments made to Rider by
HSUS through WAP.  FAC ¶¶ 44, 160.  Indeed, of the six Rider payments that HSUS made to
WAP after the January 2005 FFA/HSUS merger, *id.* ¶ 160, Lovvorn personally made at least
four of them himself, [ESA]DE 166-14, 19, 22 & 24; [ESA]DE 459, Att. 12 (DX 67).  Thus,
Lovvorn is personally responsible for at least four instances of bribery or illegal gratuities.

Defendants' claim that the FAC fails to allege their specific intent to defraud is wrong.
Supp. Mot. at 3.  "[S]pecific intent to defraud may be, and most often is, inferred from the
totality of the circumstances, including indirect and circumstantial evidence."  *United States v.
Philip Morris USA, Inc.*, 566 F.3d 1095, 1118 (D.C. Cir. 2009).  Given the specificity of the
FAC, "[t]he scienter requirements for wire and mail fraud can be inferred from the detailed
pattern of conduct alleged in the Complaint."  *BCCI*, 964 F. Supp. at 483.  *See also Johnson v.
Computer Tech. Servs.*, 670 F. Supp. 1036, 1040 n.8 (D.D.C. 1987) (under Rule 9(b),
"[f]raudulent intent need only be pleaded generally").

Lovvorn's and Ockene's own predicate offenses likewise were a pattern of racketeering
activity.  A "pattern of racketeering activity" requires "at least two acts of racketeering activity,"
not more than 10 years apart, one of which must be after 1970.  18 U.S.C. § 1961(5) (2006).
"[T]o prove a pattern of racketeering activity a plaintiff or prosecutor must show that the
racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal
activity."  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (original emphasis).
Lovvorn and Ockene make no argument about the pattern requirement that differs from what FEI
has addressed already in its main brief.  FEI Opp. at 62-67.

**B.**      **The FAC Sufficiently Pleads Lovvorn's And Ockene's Participation In The Operation Or Management Of The RICO Enterprise**

Defendants' claim that the FAC has no "factual allegations plausibly showing that these two lawyers participated in the management of a RICO enterprise," Supp. Mot. at 5, rests on the wrong legal standard. RICO liability requires participation in the *"operation or* management of the enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993) (emphasis added). In addition to upper management, RICO liability extends to "lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184. *See also United States v. Shamah*, 624 F.3d 449 (7th Cir. 2010) (where enterprise was Chicago Police Department, "lowly" police officers were "operators" per *Reves*, despite no authority for command decisions, no supervisory powers over other officers and no control over department-wide policies); *United States v. Burden*, 600 F.3d 203, 219 (2d Cir. 2010) (with discretion in performing his tasks, defendant participated in operation of enterprise despite claim that "he was doing nothing more than taking orders"); *Napoli v. United States*, 45 F.3d 680, 681, 683 (2d Cir. 1995) (law firm's private investigators who assisted attorneys in preparing cases involving false testimony, fabricated evidence and counterfeit claims were "lower rung participants" per *Reves*).[3]

Lovvorn and Ockene now claim to be just "following orders" under the management of Meyer and Glitzenstein. Even so, they are still operators. The predicate offenses that each committed demonstrates their participation in the enterprise's operation. In addition, even if paying Rider was not their idea or decision, Lovvorn and Ockene knew about the Rider payments, and with that knowledge, acted as counsel of record in the ESA Case, FAC ¶¶ 44-45, thereby knowingly carrying out the scheme to defraud FEI by perpetuating a lawsuit with no real

---

[3] Defendants Lovvorn and Ockene are not analogous to the defendant in *United States v. Viola*, 35 F.3d 37 (2d Cir. 1994) (Supp. Mot. at 4), whose participation was limited to "two acts," who "was not consulted in the decision-making process and exercised no discretion," and for whom "there was no evidence[] he was even aware of the broader enterprise." *Id.* at 43.

plaintiff. This was critical because both defendants were officers of the Court and partners in the law firm controlling the case. Had either of them refused to participate in a case fueled by a stream of corrupt payments or refused to countenance the false claims about Rider's "aesthetic injury," the enterprise likely could not have succeeded. *See In re Ins. Brokerage Antitrust Lit.*, 618 F.3d 300, 378 (3d Cir. 2010) (defendant participates in enterprise operation "'by knowingly implementing decisions' by the enterprise's managers to commit crimes") (citation omitted).

These two lawyers themselves also signed or vouched for filings containing false statements to the courts about Rider's "aesthetic injury," FAC ¶¶ 44-45, 51-56, 329 – statements proven false at trial, *ASPCA v. Feld Entm't Inc.*, 677 F. Supp. 2d 55, 71-72, 83-84, 89-90 (D.D.C. 2009) (FOF 20, 61-62; COL 6). This also was critical to the operation of the enterprise. Had the courts known the truth about Rider's lack of "aesthetic injury," the ESA Case would have ended in June 2001, when it was dismissed by this Court the first time. FAC ¶ 50. Where, as here, the lawsuit itself is fraudulent, submission of filings containing the false statements carries out the fraudulent scheme. *Bryant v. Mattel, Inc.*, 2010 U.S. Dist. Lexis 103851 at *25 (C.D. Cal. 2010) ("fraudulent statements … made to the Court in order to prevail in the litigation" cognizable under RICO). Finally, after Lovvorn and Ockene left MGC and joined HSUS, they remained counsel of record in the ESA Case, thereby giving their new employer access to control over the litigation. FAC ¶¶ 44-45. Thus, Lovvorn and Ockene were operators per *Reves*. *See Elemary v. Philipp Holzman A.G.*, 533 F. Supp. 2d 116, 142 (D.D.C. 2008) (involvement in single transaction for enterprise is operation per *Reves*).[4]

Nor can Lovvorn and Ockene claim the cover of providing "routine" legal services to the other defendants. Where, as here, the RICO enterprise is fraudulent litigation, the lawyers

---

[4] The FAC's allegations as to Lovvorn and Ockene differ entirely from the "naked allegation" that defendants "participated in the conduct of the affairs of the enterprise" that the court rejected in *VanDenBroeck v. Commonpoint Mortg. Co.*, 22 F. Supp. 2d 677, 684 (W.D. Mich. 1998), cited by defendants.

handling that case operate the enterprise, and their actions necessarily exceed the provision of ordinary legal services. *Handeen v. Lemaire*, 112 F.3d 1339, 1350 (8th Cir. 1997) (attorney participated in operation of enterprise by helping client perpetrate fraud on bankruptcy court); *Napoli*, 32 F.3d at 36 (where enterprise was pursuing false personal injury claims with bribes and false testimony, "of counsel" lawyers involved in the "core activities" of the enterprise, *i.e.*, handling the cases, participated in the management or operation of the enterprise per *Reves*); *Garrett*, 2010 U.S. Dist. Lexis 134776 at *87 (outside counsel involved in executing and concealing some of the illegal acts participated in operation of enterprise). Whether Lovvorn and Ockene managed or operated the enterprise is an issue of fact. *See First Am. Corp. v. Al-Nahyan*, 17 F. Supp. 2d 10, 24-25 (D.D.C. 1998).[5]

## II.   THE FAC STATES A CAUSE OF ACTION UNDER 18 U.S.C. § 1962(D) AS TO LOVVORN AND OCKENE

Defendants' assertion (Supp. Mot. at 7) that, to plead conspiracy under 18 U.S.C. § 1962(d), "plaintiff must allege the defendants actually agreed to all elements of a substantive RICO violation," is refuted by the very case defendants cite. In *Salinas v. United States*, 522 U.S. 52 (1997), the Court held that

> A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. … The parties in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other. … If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.

*Id.* at 63-64 (citations omitted). *See also United States v. Hein*, 2010 U.S. App. Lexis 19311 at *5 (11th Cir. 2010) (agreement to RICO conspiracy can be shown "'by an agreement to an overall objective'") (citation omitted); *United States v. Wilson*, 605 F.3d 985, 1020 (D.C. Cir.

---

[5] None of the cases cited by defendants, Supp. Mot. at 5-6, is on point because none of them involved a fraud on the court in which the lawyers handling the case were at the center of such racketeering activity.

2010) (*per curiam*)(defendant can be guilty of conspiracy even though incapable of committing the substantive offense).

Nor does a RICO conspiracy require a formal agreement. *Philip Morris*, 566 F.3d at 1130 ("A conspiracy can be inferred from a combination of close relationships or knowing presence and other supporting circumstantial evidence") (citing *United States v. Mellen*, 393 F.3d 175, 191 (D.C. Cir. 2004)). "Proof of an agreement which is a substantive violation of RICO (such as conducting the affairs of an enterprise through a pattern of racketeering) is sufficient to establish a violation of section 1962(d)." *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993). *See also Handeen*, 112 F.3d at 1355 (plaintiff claiming conspiracy "'need only establish tacit understanding between the parties'") (citation omitted); *Allstate Ins. Co. v. Linea Latina De. Acc., Inc.*, 2011 U.S. Dist. Lexis 16221 at *15 (D. Minn. 2011) (same).

Lovvorn and Ockene clearly "'adopted the goal of furthering or facilitating the criminal endeavor,'" *Oceanic Expl. Co. v. ConocoPhillips, Inc.*, 2006 U.S. Dist. Lexis 72231 at *60 (D.D.C. 2006) (citation omitted), *i.e.*, to defraud FEI of its elephants and money through a lawsuit that had no real plaintiff. They were counsel of record in the ESA Case with full knowledge of the Rider payment stream, they participated in the false statements to the courts and committed the other racketeering described above, both derivatively and individually. FAC ¶¶ 44-45, 51-56, 329; pp. 2-5, 7, *supra*. Their involvement was not random. As counsel of record, they participated in what they knew was a collective venture to pursue a lawsuit against FEI with a plaintiff who was hired to claim an injury he did not have. FAC ¶¶ 13-32. These individuals and groups, including Lovvorn and Ockene, associated together for the common goals of forcing elephants out of FEI's circus, draining FEI's resources, and raising funds for organizations whose causes they supported. FAC ¶¶ 2, 9-12. These allegations more than

sufficiently plead Lovvorn's and Ockene's involvement in a § 1962(d) conspiracy. *See Bryant*, 2010 U.S. Dist. Lexis 103851 at *46 (because "the nature of the uncontested relationships between the alleged co-conspirators is suggestive, if not supportive of agreement" § 1962(d) conspiracy adequately alleged).[6]

## CONCLUSION

For the foregoing reasons, defendants' motion should be denied.

Dated: March 4, 2011                    Respectfully submitted,


                                        _____/s/_____
                                        John M. Simpson (D.C. Bar #256412)
                                        jsimpson@fulbright.com
                                        Stephen M. McNabb (D.C. Bar #367102)
                                        smcnabb@fulbright.com
                                        Michelle C. Pardo (D.C. Bar #456004)
                                        mpardo@fulbright.com
                                        FULBRIGHT & JAWORSKI L.L.P.
                                        801 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20004
                                        Telephone: (202) 662-0200
                                        Facsimile: (202) 662-4643
                                        Counsel for Plaintiff Feld Entertainment, Inc.

---

[6] As defendants' own authority recognizes, the agreement can be implied from the circumstances. *See* Supp. Mot. at 8 n.5 (citing *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997) (plaintiff must provide "sufficient facts to *infer*" defendant's agreement to enter into a RICO conspiracy") (emphasis added). Defendants' reliance upon *Doe I v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005), is misplaced. The conspiracy claim failed there because "the complaint never provide[d] specific facts to suggest that the [defendants] knew that such predicate acts were occurring," that the defendants receiving their donations were committing the predicate acts, or that their contributions might be used to commit these acts. *Id.* at 120 (emphasis added). Lovvorn's and Ockene's situation is completely different.